UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ROBERT L. POWELL

    Plaintiff,

  v.

UNION PACIFIC RAILROAD COMPANY, RAY PERRY, LINDA PITCHFORD, TYLER PAPWORTH, BRIAN KLINE, and DOES 1 to 10, inclusive,

    Defendants.

NO. CIV. 2:09-cv-01857-FCD-KJM

MEMORANDUM AND ORDER

----oo0oo----

  This matter is before the court on the motion of Union Pacific Railroad Company ("UPRR"), Ray Perry ("Perry"), Linda Pitchford ("Pitchford"), Tyler Papworth ("Papworth"), and Brian Kline ("Kline") (collectively, "defendants") to dismiss plaintiff's Third, Fourth, and Fifth causes of action in plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff Robert L. Powell

("plaintiff") opposes the motion. For the reasons set forth below,[1] defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff instituted this action seeking damages arising out of an alleged railroad injury and a subsequent allegedly wrongful termination.  The complaint names as defendant UPPR and other UPRR employees, namely Perry, Pitchford, Papworth, and Kline.

Plaintiff alleges that he was injured while operating a track switch on or about July 28, 2007. (First Am. Compl. ("Compl."), filed June 4, 2009, ¶¶ 3-5.)  On the same day he was injured, plaintiff completed a personal injury report regarding the incident and his resulting injuries. (Id. ¶ 15.)  Plaintiff alleges that approximately a year later, UPRR falsely accused plaintiff of violating UPRR's work rules by being dishonest in his personal injury report. (Id. ¶ 18.)  During the disciplinary hearing, plaintiff alleges that UPRR disclosed that defendant Kline had eavesdropped on a telephone conversation between Papworth and plaintiff without plaintiff's knowledge. (Id. ¶ 19.)  Plaintiff also alleges that UPRR relied upon the contents of this purportedly illegal conversation to support its false allegation that plaintiff had been dishonest. (Id.)  On August 25, 2008, UPRR terminated plaintiff's employment. (Id.)

Plaintiff claims that defendants wrongfully disciplined and illegally discharged him by falsely accusing him of dishonesty. (Id. ¶¶ 20.)  Plaintiff alleges that defendants falsely accused

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

2

him in order to absolve management of any responsibility and to misrepresent the true facts of defendants' negligence on the railroad. (Id. ¶ 21.) Plaintiff also alleges that the false accusation of dishonesty was a pretext to retaliate against him for making the work-related injury report and for seeking compensation pursuant to the Federal Employment Liability Act ("FELA"). (Id. ¶ 22.)

In his Third cause of action, plaintiff alleges that defendants wrongfully retaliated against him in violation of the public policy of the State of California. (Id.) In his Fourth cause of action, plaintiff claims that defendants violated the California Invasion of Privacy Act when Kline eavesdropped on his conversation with Papworth. (Id. ¶ 32.) In his Fifth cause of action, plaintiff asserts a claim of intentional infliction of emotional distress against the defendants. (Id. ¶¶ 39-42.)

Defendants now move to dismiss plaintiff's claims on the grounds that: (1) the Railway Labor Act preempts the Third and Fifth causes of action; (2) FELA preempts the Third cause of action; and (3) plaintiff fails to state cognizable claims for his Third, Fourth, and Fifth causes of action. (Defs.' Mem. Mot. Dismiss ("Defs.' Mem"), filed July 17, 2009.)

**STANDARD**

On a motion to dismiss, the allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff

3

need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged.  See id.

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Mir v. Little Co. of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp.2d 1035, 1042 (C.D. Cal. 1998).

Ultimately, the court may not dismiss a complaint in which the plaintiff alleged enough facts to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed.  Id. at 1952.  When there are well-pleaded factual allegations, "a court should assume their

4

veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950.

## ANALYSIS

**A.  Railway Labor Act Preemption**

Defendants contend that the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.*, preempts the Third and Fifth causes of action because the outcome of the claims are substantially dependent upon an analysis of the terms of a collective bargaining agreement ("CBA").

**1.   Wrongful Termination In Violation of Public Policy**[2]

In his Third cause of action, plaintiff asserts that defendants wrongfully terminated him in violation of public policy.  (Compl. ¶ 22.)  Defendants argue that whether plaintiff

---

[2]  Specifically, plaintiff states that UPRR wilfully and wrongfully retaliated against him "in violation of California Labor Code § 132a, 49 U.S.C. § 20109(a)(4), and the public policy of the State of California."  (Compl. ¶ 22.)  Defendants point out that if plaintiff were to state causes of action based upon violations of Labor Code § 132a and 49 U.S.C. § 20109(a)(4), plaintiff's claims would fail.  (Defs.' Mem. Mot. Dismiss ("Defs.' Mem."), filed July 17, 2009, at 9-17.)  However, as plaintiff clarifies that he is not pleading any causes of action pursuant to these two statutes, the court need not reach the merits of the statutory causes of actions.  (Pl.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n"), filed Aug. 18, 2009, at 15.)

Defendants nevertheless contend that plaintiff's drafting error should not be excused.  Defendants argue that, by pleading a statutory violation under 49 U.S.C. § 20109(a)(4), plaintiff has elected his remedy pursuant to § 20109(f), which precludes him from pursuing common law tort remedies for the same unlawful act.  (Defs.' Mem. Reply Pl.'s Opp'n, ("Defs.' Reply"), filed Aug. 28, 2009, at 9.)

The court disagrees.  Under the federal rules of pleading, a party may set out more than one alternative claim, regardless of consistency; the pleading is sufficient if any one of them is sufficient. Fed. R. Civ. P. 8(d).  Accordingly, the court addresses plaintiff's Third cause of action as a common law wrongful termination in violation of public policy cause of action.

was properly dismissed under the CBA or whether plaintiff's discharge was motivated by retaliatory reasons cannot be determined without interpreting the CBA.

The RLA establishes a comprehensive framework to resolve labor disputes in the railroad industry. See 45 U.S.C. § 151a; Hawaiian Airlines v. Norris, 512 U.S. 246, 252 (1994); Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 563 n.9 (1987). Minor disputes that require the interpretation or application of a collective bargaining agreement can be resolved only through the RLA mechanisms. See Norris, 512 U.S. at 252-53. However, the RLA does not preempt a state law cause of action if the claim involves rights and obligations that exist independent of the CBA and if the claim requires only a purely factual inquiry into the retaliatory motive of the employer. See id. at 260, 266. In a common law claim of wrongful termination in violation of public policy, "the cause of action turns on why the employer took the action it did, and the existence of a source of public policy to which the employee's claim is tethered." Cramer v. Consol. Freightways, Inc., 209 F.3d 1122, 1134-35 (9th Cir. 2000). An employee's right not to be discharged in violation of public policy is a right independent from any provision of a CBA. See Norris, 512 U.S. at 258. Whether the employer's conduct or motives demonstrate retaliatory behavior is also a purely factual question. Id. at 261.

Plaintiff does not allege that defendants owe him any obligation pursuant to the CBA but asserts a claim that defendants violated public policy in terminating him. Therefore, plaintiff relies upon state common law as the source of his

6

right, which is independent of any CBA provision.  Plaintiff also alleges that defendants falsely accused him of dishonestly filing an injury report as a pretext to fire him in retaliation for his injury report and FELA claim.  (Id. ¶¶ 20-22.)  To determine defendants' motives in terminating plaintiff, the court's starting point of inquiry would be whether defendants' accusation – that plaintiff lied in his injury report – is false.  This is a factual inquiry that needs no interpretation of the CBA. Norris, 512 U.S. at 261 ("[P]urely factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a collective-bargaining agreement"); Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 (1988).

Defendants argue that the court would have no choice but to interpret the CBA in order to determine if UPRR was justified in terminating plaintiff for his alleged dishonesty or whether the termination was done on a pretext.  (Defs.' Reply at 2-3.) However, plaintiff is not disputing defendants' right to discharge him on the basis of his alleged dishonesty; plaintiff alleges that defendants falsely accused him of dishonesty in order to terminate him.

Furthermore, the cases cited by defendants to support their argument are distinguishable from the case at bar.  In Bielicke v. Terminal R.R. Ass'n, 30 F.3d 877, 878 (7th Cir. 1994) and Hammond v. Terminal R.R. Ass'n of St. Louis, 848 F.2d 95, 97 (7th Cir. 1998), the plaintiffs alleged that their employers abused investigation or termination procedures that were laid out in the CBAs.  Here, plaintiff does not allege a mere abuse of the

7

defendants' powers under the CBA, but rather that defendants falsely accused him of dishonesty in order to terminate his employment.  Unlike in <u>Bielicke</u> and <u>Hammond</u>, the terms of the CBA are irrelevant to the resolution of plaintiff's claim.  It is unlikely that anything in the CBA could be interpreted to give defendants the right to accommodate false allegations as the basis for a discharge.[3]  <u>Cf.</u> <u>Hirras v. Nat'l R.R. Passenger Corp.</u>, 44 F.3d 278, 283-84 (5th Cir. 1995) (holding that the RLA did not preempt an intentional infliction of emotional distress claim despite defendant's argument that the terms of a CBA were necessary to analyze the employer's handling of the matter because nothing in the CBA could give the employer a right to accommodate sexual harassment).

The court is also unpersuaded by defendants' reliance on <u>Monroe v. Mo. Pacific R.R. Co.</u>, 115 F.3d 514 (7th Cir. 1997).  In <u>Monroe</u>, the plaintiff was on medical leave for a work-related physical injury when he was video-taped installing a satellite dish.  <u>Id.</u> at 515.  The plaintiff was discharged after a doctor who saw the footage opined during a disciplinary hearing that the plaintiff could do physical railroad work.  <u>Id.</u>  The plaintiff contested the discharge and the propriety of the disciplinary hearing because the defendants presented the testimony of a doctor who never had examined him.  <u>Id.</u> at 515. The court noted that plaintiff's claims did not involve purely factual questions because plaintiff alleged the railroad failed to avail itself of its right under the CBA to compel him to undergo a medical

---

[3]    Further, the court could not make such an adverse inference on a motion to dismiss.

8

examination.  Id. at 518.  Moreover, the court acknowledged that it would have to analyze the standards in a CBA regarding the physical condition required for railroad work to analyze plaintiff's claim of a pretextual discharge.  Id.

While the allegations in this case are similar to the allegations in Monroe because both plaintiffs challenged the propriety of a disciplinary hearing that used purportedly false accusations as evidence, Monroe was a "close case."  Id. at 519. The situation presented in Monroe is sufficiently distinguishable from the situation alleged in this case such that RLA preemption is not justified.  In finding preemption, the Monroe court primarily relied on the fact that it would have to analyze the standards set forth in the CBA in order to fully adjudicate the plaintiff's claims.  Conversely, in this case, plaintiff has not pled any reliance on rights, obligations, or standards contained in a CBA.  As such, plaintiff's case is sufficiently distinguishable and presents a stronger case against preemption, particularly at this stage in the litigation.

Therefore, to the extent that the court need only make a purely factual inquiry into defendants' motives without interpreting any provision of the CBA, the RLA does not preempt plaintiff's Third cause of action.

**2. Intentional Infliction Of Emotional Distress**

In his Fifth cause of action, plaintiff asserts a claim of intentional infliction of emotional distress. (Compl. ¶ 39.) Defendants argue that determining whether an employer's conduct is outrageous, an element of the cause of action, requires an interpretation of the CBA; thus, the RLA preempts this claim.

9

The Ninth Circuit has established general principles to determine when an intentional infliction of emotional distress tort will be preempted. <u>Humble v. Boeing Co.</u>, 305 F.3d 1004, 1013 (9th Cir. 2002).[4]  First, the claim will generally be preempted if the CBA specifically covers the conduct at issue, that is, when the allegedly wrongful behavior has been the product of negotiation between the employer and the employee. <u>See</u> <u>id.</u>  For example, the propriety of a disciplinary hearing or procedures for discharge are within the scope of a CBA. <u>See</u> <u>Monroe</u>, 115 F.3d at 518.  Second, if the CBA does not address the allegedly extreme and outrageous conduct, the intentional infliction claim is not preempted. <u>Humble</u>, 305 F.3d at 1013. Offensive behavior, such as on-the-job harassment, is not governed by the CBA and requires only a purely factual inquiry into the conduct and motivation of the employer. <u>See</u> <u>Perugini v. Safeway Stores, Inc.</u>, 935 F.2d 1083, 1088 (9th Cir. 1991). Third, even if the CBA purportedly covers the conduct at issue, the claim still may not be preempted if it is "tacked on to the violation of a separate specific non-negotiable state statute, the violation of which always rises to the level of outrageousness." <u>Humble</u>, 305 F.3d at 1013-14.  For example, when the allegedly outrageous conduct is based on a violation of a

---

[4] Although <u>Humble</u> specifically addressed Labor Management Relations Act ("LMRA") preemption of intentional infliction of emotional distress claims, the U.S. Supreme Court in <u>Norris</u> stated that the "common purposes of the two statutes, the parallel development of RLA and LMRA preemption law, . . . and the desirability of having a uniform common law of labor law preemption" support the application of standards established for LMRA preemption in RLA cases. <u>Norris</u>, 512 U.S. at 263 n.9.

10

specific California Penal Code provision, the CBA may not preempt the claim.  <u>Cramer</u>, 255 F.3d at 697.

Plaintiff's claim is premised on defendants' false accusation of plaintiff's dishonesty, the alleged violation of the Penal Code when Kline eavesdropped on his conversation with Papworth, and the improper use of the conversation during his disciplinary hearing.  (Compl. ¶ 38.)  Accepting plaintiff's allegations as true, an employer's false accusation of an employee's dishonesty in order to terminate him is similar to on-the-job harassment that does not fall within the compensation bargain.  Furthermore, even if eavesdropping on plaintiff's conversation implicates the propriety of an investigative procedure, plaintiff alleges that this particular conduct violates the California Penal Code.  Therefore, to the extent that plaintiff claims that defendants behaved outrageously by falsely accusing him of dishonesty and eavesdropping on his conversation, the court cannot find that RLA preemption applies as a matter of law.

Accordingly, based on plaintiff's allegations, the RLA does not preempt plaintiff's claim of intentional infliction of emotional distress.[5]

**B.   Federal Employers Liability Act Preemption**

Defendants also argue that the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, preempts plaintiff's claim

---

[5] Based upon these findings, the court need not address whether a violation of the California Invasion of Privacy Act necessarily rises to the level of outrageousness.

for wrongful termination in violation of public policy.[6] (Defs.' Mem. at 5.)  Defendants, without citation to any legal authority, base their argument on the absence of any FELA provision that precludes an employer from the retaliatory discipline or discharge of an employee.  (Id.)

Defendants' argument is without merit.  "FELA preempts state law within its domain."  Metropolitan Coal Co. v. Johnson, 265 F.2d 173, 177 (1st Cir. 1959).  "The original intent of FELA is to compensate for physical injury."  Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1082 (9th Cir. 2002).  In contrast, FELA does not encompass claims that do not address a physical injury or an emotional injury arising from the fear of personal injury.  See Conrail v. Gottshall, 512 U.S. 532, 556 (1994) (limiting the scope of emotional injury claims that could be brought under FELA); Rivera, 331 F.3d at 1082 (holding that defamation could not properly be pled as a FELA claim due to FELA's intent to compensate for injuries caused by a "physical phenomenon").  Accordingly, when a claim is unavailable under FELA, a railroad employee may proceed with a state law claim. See Rivera, 331 F.3d at 1082 (holding that as defamation is not properly pled as a FELA claim, the railroad employee should be allowed to proceed with a state law claim for defamation); Harris-Scaggs v. Soo Line R.R., 2 F. Supp. 2d 1179, 1181 (E.D. Wis. 1998) (holding that the plaintiff could pursue state claims

---

[6] Defendants initially argued that FELA preempted plaintiff's intentional infliction of emotional distress claim. (Defs.' Mem. at 18.)  However, in their reply, defendants appear to concede that FELA does not preempt such a claim.  (Defs.' Reply at 6 n.2.)  Accordingly, the court does not address this issue.

12

for negligent and intentional infliction of emotional distress that were predicated on racial discrimination).

Defendants concede that FELA does not encompass employees who are discharged or disciplined for initiating FELA actions on their own behalf. (Defs.' Mem. at 5.) Therefore, the unavailability of such a claim under FELA does not bar plaintiff from proceeding with a state law claim which, in this case, is a common law wrongful termination action in violation of public policy.

**C.    Motion To Dismiss For Failure To State A Cognizable Claim**

    **1.    Wrongful Termination In Violation Of Public Policy**

        **a.    Claim Against UPRR**

Defendants argue that plaintiff's Third cause of action for wrongful termination in violation of public policy fails because plaintiff does not allege that his claim is tethered to any particular statutory of constitutional provision. (Defs.' Mem. at 7.)

An employee may assert a claim of wrongful termination in violation of public policy, commonly known as a "Tameny" claim, if the employer terminates the employee for exercising a constitutional or statutory right or privilege. See Green v. Ralee Engineering Co., 19 Cal. 4th 66, 76 (1998); Tameny v. Atl. Richfield Co., 27 Cal. 3d 167, 176 (1980). The public policy must be tethered to a constitutional provision, statute, or administrative regulation that serves a statutory objective. Green, 19 Cal. 4th at 76. If the source articulating the public policy includes substantive limitations in scope or remedy, these limitations also "circumscribe the common law wrongful discharge

13

of action." City of Moorpark v. Superior Court, 18 Cal. 4th 1143, 1159 (1998).

Construing plaintiff's allegations liberally, plaintiff identifies 49 U.S.C. § 20109(a)(4) as the source of public policy underpinning his claim.  Section 20109(a)(4) forbids a railroad carrier or its employees from discharging or discriminating against an employee who suffers a work injury and, in good faith, notifies or attempts to notify the railroad carrier of a work-related personal injury.  This provision is part of the Railway Safety Improvement Act of 2008 (formerly known as the Federal Railroad Safety Authorization Act of 1994), or 49 U.S.C. §§ 20101 et seq.  The purpose of this act is "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."  49 U.S.C. § 20101.  While there is no precedent establishing 49 U.S.C. § 20109(a)(4) as the basis of a common law wrongful termination claim, Green establishes that federal statutes and regulations promulgating public safety objectives may give rise to such a claim.  See Green, 19 Cal. at 89-90 (holding that employees may assert a common law wrongful termination claim by identifying the public policy behind federal regulations concerning airline safety).

Plaintiff alleges that defendants terminated him after he filed a work injury report pursuant to federal regulations and that his termination illustrates a mechanism by which defendants distort the true facts of the railroad's negligence in order to avoid responsibility.  (Compl. ¶¶ 16, 21.)  Plaintiff also alleges that defendants terminated him in retaliation for notifying UPRR about his work-related injury and in retaliation

14

for exercising his rights pursuant to FELA. (Compl. ¶ 22.) The public policies that plaintiff identifies as the basis for his claim concern railroad safety and the need to protect railroad workers from retaliatory discharge. (Pl.'s Opp'n at 6.) While the underlying policy of 49 U.S.C. § 20109 does not specifically express opposition to retaliatory discharges, plaintiff has alleged sufficient facts implicating railroad safety concerns. As railroad safety implicates public safety objectives, plaintiff has sufficiently pled a common law wrongful termination in violation of public policy cause of action. See Green, 19 Cal. 4th 81-83 (finding that federal regulations promoting the proper manufacture and inspection of component airline parts may provide a basis for declaring a public policy for a retaliatory discharge action).[7]

As plaintiff has pled a cognizable claim of wrongful termination in violation of public policy against UPRR, defendants' motion to dismiss the wrongful termination claim against UPRR is DENIED.

### b.   Claims Against Individual Defendants

Defendants also assert that a wrongful termination claim against the individual defendants must fail because the expansive language in 49 U.S.C. § 20109 should not be interpreted to create individual liability. (Defs.' Mem. at 17.) The court need not address the merits of this argument because plaintiff's claim of

---

[7]   Defendants contend that 49 U.S.C. § 20109(a)(4) cannot be the basis of a wrongful termination claim because the statute does not create a private cause of action. (Defs.' Reply at 7.) However, the statutory basis for the public policy need not give rise to a private cause of action. See Green, 19 Cal. 4th 81-83.

wrongful termination against the individual defendants fails because plaintiff's *Tameny* claim may only be asserted against UPRR.

"[A] *Tameny* action for wrongful discharge can only be asserted against an employer. An individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy; rather, he or she can only be the agent by which an employer commits that tort." Miklosy v. Regents of the Univ. of Cal., 44 Cal. 4th 876, 900 (2008). Therefore, as plaintiff identifies the individual defendants as UPRR employees, plaintiff cannot assert a claim of wrongful discharge in violation of public policy against the individuals.

Accordingly, defendants' motion to dismiss the wrongful termination claim against the individual defendants is GRANTED.

### 2. Criminal Eavesdropping

In his Fourth cause of action, plaintiff alleges a violation of Section 632(a) of the California Penal Code. (Compl. ¶ 32.) However, plaintiff clarifies in his opposition that he is actually alleging a violation of Section 631 of the California Penal Code. (Pl.'s Opp'n at 17.) Accordingly, defendants' motion to dismiss is GRANTED.

However, pursuant to Rule 15(a), "leave to amend is to be freely given when justice so requires." "[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." Martinez v. Newport Beach, 125 F.3d 777, 785 (9th Cir. 1997). As plaintiff alleges that Papworth eavesdropped on plaintiff's conversation with Kline through the use of a second

16

receiver, plaintiff has sufficiently pled facts to set forth a cognizable violation of Section 631. As such, the court grants plaintiff leave to amend.

### 3. Intentional Infliction Of Emotional Distress

In the Fifth cause of action, plaintiff alleges a claim of intentional infliction of emotional distress. (Compl. ¶ 39.) Defendants argue that the claims against Perry and Pitchford should be dismissed because "a supervisor cannot be found individually liable for the tort of intentional infliction of emotional distress in a retaliation case." (Defs.' Mem. at 19.)

Defendants' reliance on Miklosy for that proposition, however, is unpersuasive. In Miklosy, the intentional infliction of emotional distress claim was barred because California's workers' compensation laws provided the exclusive remedy for allegedly wrongful conduct that occurred at the worksite in the normal course of employer-employee relationship. Miklosy, 44 Cal. 4th at 902-03. However, railroad workers such as plaintiff are not governed by California's workers' compensation laws but by FELA. Lund v. San Joaquin Valley R.R., 31 Cal. 4th 1, 6 (2003) (holding that while injured employees in California "are generally entitled to workers' compensation benefits ... those benefits are not available to railroad employees who suffer on-the-job injuries ... [whose] right of recovery is governed by the FELA"). Defendants concede that FELA does not preempt intentional infliction of emotional distress claims.

Accordingly, as defendants cannot support this argument with authority, defendants' motion to dismiss the Fifth cause of action is DENIED.

17

**D.   Attorney's Fees**

Plaintiff also requests the court to award him attorney's fees and costs. Defendants moves to strike plaintiff's request because plaintiff does not identify any statutory basis for the request. "In California, there must be a statutory basis for attorney's fees." <u>Garcia v. Clovis Unified Sch. Dist.</u>, 2009 U.S. Dist. LEXIS 83352, at *72 (E. D. Cal. 2009). Plaintiff fails to address defendants' motion in his opposition.[8] Accordingly, defendants' motion to strike plaintiff's request for attorney's fees is GRANTED with leave to amend.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss for failure to state cognizable claims is GRANTED in part and DENIED in part.

(1) Defendants' motion to dismiss plaintiff's Third cause of action against the individual plaintiffs is GRANTED.

(2) Defendants' motion to dismiss plaintiff's Third cause of action against UPRR is DENIED.

(3) Defendants' motion to dismiss plaintiff's Fourth cause of action is GRANTED with leave to amend.

(4) Defendants' motion to dismiss plaintiff's Fifth cause of action is DENIED.

(5) Defendants' motion to strike plaintiff's request for attorneys' fees is GRANTED with leave to amend.

---

[8] The court also notes that plaintiff failed to respond to defendants' motions to strike in his opposition. On that basis alone, the court could grant the motion, as plaintiff's silence is properly construed as a non-opposition to the motion. See E.D. Cal. L.R. 78-230(c).

1        IT IS SO ORDERED.
2   DATED: October 2, 2009

                                    _____
                                    FRANK C. DAMRELL, JR.
                                    UNITED STATES DISTRICT JUDGE