1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

ROBERT L. POWELL,

NO. CIV. S-09-1857 KJM-CKD

11

        Plaintiff,

12

    v.

ORDER

13

UNION PACIFIC RAILROAD
COMPANY, *et al.*,

14

15

        Defendants.

16

_____/

17

        This matter is before the court on cross motions for summary judgment brought

18

by Robert Powell ("Powell" or "plaintiff"), Tyler Papworth ("Papworth") and Union Pacific

19

Railroad Company ("UP") and Robert Kline ("Kline") (collectively, "defendants"). The court

heard argument on September 14, 2011. Larry Lockshin appeared for Powell; Robert Chalfant

20

appeared for Papworth; and Jacob Flesher and Julia Gahagan appeared for UP. For the reasons

21

set forth below, the court GRANTS in part and DENIES in part plaintiff's motion, DENIES

22

UP's motion[1] and GRANTS Papworth's motion.

23

I.      PROCEDURAL BACKGROUND

24

        This matter was initiated in the Superior Court of California, County of San

25

Joaquin, on September 8, 2008. (ECF 1-1.) On July 9, 2009, UP removed the case to this court

26
27
28

_____

[1] Kline belatedly joined in UP's motion. (ECF 120.) Plaintiff did not object. Therefore, the rulings resolving UP's motion apply equally to Kline.

1   under 28 U.S.C. § 1441(b). (ECF 1.) On October 21, 2009, plaintiff filed an amended complaint.

2   (ECF 18.) In his amended complaint, plaintiff alleges the following causes of action: (1) that UP

3   was negligent in violation of the Federal Employee Liability Act ("FELA"), 45 U.S.C. 51, *et.*

4   *seq.*; (2) that UP failed to provide plaintiff with a safe working environment in violation of the

5   Railway Safety Act, 49 U.S.C. § 21101, *et. seq.*; (3) retaliation and wrongful termination in

6   violation of public policy against UP; and (4) eavesdropping in violation of California's Invasion

7   of Privacy Act as set forth in California Penal Code § 630, *et. seq.*, against UP, Papworth and

8   Kline. (*Id.*) UP answered the amended complaint on November 10, 2009, and Papworth and

9   Kline answered on January 19, 2010. (ECF 19, 27.) On June 10, 2011, Papworth filed its motion

10  for summary judgment. (ECF 66.) On June 15, 2011, plaintiff, UP and Kline filed their motions

11  for summary judgment. (ECF 67, 78, 120.)

12  II.   <u>FACTS</u>

13        In 2007, plaintiff Robert Powell was employed as a trainman by UP. (ECF 117

14  ¶ 12.) On June 28, 2007, plaintiff was responsible for aligning switch 15 in the Stockton rail

15  yard, which required plaintiff to "throw the switch." (*Id.* ¶ 7, 8.) According to plaintiff, while

16  throwing the switch, he felt a pain in his back. (*Id.* ¶ 9.) Plaintiff reported his injury the same day

17  by filling out a report of personal injury or illness. (ECF 92 at 7-8.) According to plaintiff,

18  afterwards he was unable to perform his duties at work. (ECF 103 ¶ 2.) Greg Goodwill, a UP

19  claims agent, spoke with plaintiff about his job capabilities after plaintiff's alleged injury. (ECF

20  117 ¶ 3.) Plaintiff did not return to work as a trainman after the injury. (ECF 78-2 at 2.)

21        Ray Perry has been the superintendent for UP's Roseville Yard since November

22  2004. His territory includes the Stockton yard. (ECF 102 ¶ 71.) Perry requested the videotaping

23  of plaintiff. (ECF 93-2 at 28.) Approximately a year later, on June 6, 2008, UP filmed plaintiff

24  performing activities that UP characterizes as pulling, pushing, and bending. (ECF 103 ¶ 3.)

25  According to UP, its video shows plaintiff performing activities that are inconsistent with the

26  limited activities he told UP he could engage in. (*Id.*) Plaintiff contests that his actions shown in

27  the video are consistent with what he told UP he was capable of. (*Id.*) Based on the video, UP

28  initiated a disciplinary investigation against plaintiff in accordance with the terms of the

collective bargaining agreement ("CBA"), alleging he had falsified information on the official

form reporting his injury on July 28, 2007, a Level 5 offense, making him eligible for

termination. (*Id*. ¶ 4.) Plaintiff declined to answer questions or otherwise participate in the

investigative hearing, instead relying on an exhibit containing earlier statements to Perry. (ECF

92-3 at 48.) After the investigatory hearing, plaintiff was found guilty of a Level 5 violation

under the Union Pacific Discipline Policy and terminated on August 25, 2008. (*Id*. ¶ 5.)[2]  Perry is

the UP employee that set up the investigation of plaintiff and issued his discipline. Perry also

was the one that made the decision to fire plaintiff. (ECF 102 ¶ 128.)

   Plaintiff appealed his dismissal to the Railway Labor Board, which denied the

appeal in its entirety. The Railway Labor Board determined that "claimant was charged with

being dishonest in connection with being able to perform the functions of his position. The

record clearly proved the above charge and that the claimant was dishonest in his actions in

violation of Rule 1.6 dismissal is the appropriate penalty for dishonesty." [*sic*] (*Id*. ¶ 6.) The

CBA provides the procedures to follow in carrying out discipline, including that "employees will

not be disciplined without just and sufficient cause as determined by a fair and impartial

investigation . . ." (*Id*. ¶ 7.)

   From 2001 to November 2010, Papworth was plaintiff's supervisor at UP. (ECF

87-2 ¶ 11.) The basis for plaintiff's eavesdropping claim is a call that occurred on June 8, 2008,

around 3:00 p.m., when Papworth called plaintiff. (ECF 117 ¶¶ 2, 13.) Both Papworth and Brian

Kline ("Kline") were officers with UP at the time of the June 8, 2008 call. (ECF 117 ¶ 1.)

Papworth initiated that call to discuss plaintiff's physical capabilities and the possibility that

plaintiff could be a yardmaster. (ECF 87-2 ¶ 13.) Kline provided Papworth with questions to ask

of plaintiff. (ECF 87-2 ¶ 14.) Papworth testified to the contents of his call with plaintiff at the

---

[2] Each party makes apparent gratuitous use of numerous relevance objections. It is
axiomatic that a court only considers relevant evidence on a motion for summary judgment. *See
Burch v. Regents of the University of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)
("A court can award summary judgment only when there is no genuine dispute of *material* fact.
It cannot rely on irrelevant facts, and thus relevance objections are redundant.") (emphasis in
original).  The court has considered the objections lodged against each contested fact and notes
its resolution only where the objection contains some merit.

1  investigative hearing. Kline did not testify. In Papworth's testimony at the investigative hearing,

2  he makes clear he thought Kline was on the line when he spoke with plaintiff. (ECF 92-3 at 4-5.)

3  In his deposition, Perry stated that what he saw on the video was inconsistent with plaintiff's

4  representation to Papworth on the call, that his capabilities were limited. (ECF 93-3 at 5-6.)

5  Perry also indicates he spoke with Kline about the June 8 call, although it is not clear from the

6  testimony whether this discussion occurred before the call was placed or afterward. (ECF 102

7  ¶ 135.)

8  III.   LEGAL STANDARD

9          A court will grant summary judgment "if . . . there is no genuine dispute as to any

10  material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

11  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

12  resolved only by a finder of fact because they may reasonably be resolved in favor of either

13  party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[3]

14          The moving party bears the initial burden of showing the district court "that there

15  is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477

16  U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that

17  there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

18  475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts

19  of materials in the record . . .; or show[] that the materials cited do not establish the absence or

20  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

21  support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

22  nonmoving party] must do more than simply show that there is some metaphysical doubt as to

23  the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact

24  . . . . Only disputes over facts that might affect the outcome of the suit under the governing law

25  /////

26

27          [3] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely
    on cases decided before the amendment took effect, as "[t]he standard for granting summary
28  judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010
    amendments.

1    will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248 (emphasis in

2    original).

3            In deciding a motion for summary judgment, the court draws all inferences and

4    views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at

5    588; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole

6    could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue

7    for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*,

8    391 U.S. 253, 289 (1968)).

9    IV.    <u>ANALYSIS</u>

10           A.    Eavesdropping (Plaintiff's Fourth Cause of Action)

11           Both plaintiff and Papworth move for summary judgment on plaintiff's claim for

12   eavesdropping in violation of California Penal Code § 631(a). (ECF Nos. 66-1, 78.)

13   Defendants UP and Papworth also move for summary judgment on the proper measure of

14   damages for this claim. (ECF Nos. 66, 67-1.)

15           1.    Papworth

16           Papworth argues section 631(a) applies to third party actions and therefore, as a

17   party to the call, he cannot be liable as a matter of law. (ECF 66-1.) Plaintiff contends that the

18   language of section 631 is clear and a participant should be liable for aiding or conspiring with a

19   third party to enable that party to listen in on the call.

20   /////

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

27   /////

28   /////

California Penal Code 631(a) criminalizes eavesdropping for the following actions:

> [a]ny person who. . . intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument. . . or who willfully and without the consent of all parties to the communication. . . or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section. [4]

Section 631 broadly proscribes third party access to ongoing communications. "Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties." *Ribas v. Clark*, 38 Cal.3d 355, 359 (1985). In *Ribas*, during an acrimonious divorce battle, the wife requested her attorney listen in on a call between her and her husband over an extension line. *Id.* at 358. The attorney subsequently testified to the contents of that call in an arbitration proceeding. *Id*. The California Supreme Court observed that listening in on another's telephone call "denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." *Id*. at 361. The third party focus of section 631 is confirmed by *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975), where the court held that only a third party could violate the section 631 proscription on eavesdropping. It reasoned, "[i]t is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Id*. at 900. Published cases are in accord that section 631

---

[4] Although plaintiff's complaint generally alleges a violation of the California Invasion of Privacy Act, both his own motion and his opposition to Papworth's motion make clear his claim is proceeding solely on section 631. (*See generally*, ECF Nos. 78, 91, 108.) Accordingly, the court does not analyze whether plaintiff would have a viable claim against any party under section 632, which allows for liability to a participant to a call. *See Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377 (2011) (holding a company may violate section 632 where supervisors listen in on phone calls between employees and customers without announcing their presence). In *Kight*, the court held that each individual listener should be counted as a person as opposed to both corporate employees counting as one corporate person. *Id*. at 1391 ("[T]he corporation is not a single unit and all participants to the conversation must give consent before the conversation may be monitored."). Therefore, the additional person constituted another person listening in and "eavesdropping." The *Kight* opinion contained a discussion of the propriety of requiring the listener be a third party. To the extent applicable here, the court considers that portion dicta and unpersuasive in the section 631 context.

applies only to third parties and not participants. *See, e.g., Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (Section 631, "which is quite ambiguous, has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."); *Membrila v. Receivables Performance Mgmt, LLC*, No. 09-CV-2790-IEG (RBB), 2010 WL 1407274, at *2 (S.D. Cal. April 6, 2010) ("Plaintiff's claim for violation of Section 631 fails, because this section applies only to eavesdropping by a third party and not to recording by a participant to a conversation."); *cf. Thomasson v. GC Services Ltd. Partnership*, 321 F. App'x 557, 559 (9th Cir. 2008) ("California courts interpret 'eavesdrop,' as used in § 632, to refer to a third party secretly listening to a conversation between two other parties.").[5]

Moreover, in *Warden*, after summarizing instances of section 631 being labeled ambiguous, the court reasoned "[s]ince we are dealing with a penal statute, language so ambiguous should be interpreted in favor of the alleged violator." *Warden*, 99 Cal. App. 3d at 817 n.3. More recently, the California Supreme Court has applied civil statutory interpretation principles to provisions of the Invasion of Privacy Act, reserving interpretation of the same for a possible criminal setting. *See Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 116 n.6 (2006) (In determining whether a civil action may proceed, "there is no need to determine whether penal sanctions properly could or should be imposed under these circumstances.").

Given the settled nature of the third-party focus of section 631, the court declines to adopt plaintiff's alternate reading. As such, Papworth's motion for summary judgment is GRANTED.

2.    Kline & UP

The parties dispute whether eavesdropping actually occurred during the June 8 call. When asked in depositions whether eavesdropping occurred Papworth and Kline each invoked their Fifth Amendment right under the United States Constitution, which prevents

---

[5] Plaintiff concedes that the only case in agreement with his proffered interpretation is the unpublished opinion of *Nagy v. Whittlesey Auto. Group*, 47 Cal. Rptr. 2d 395 (1995). The court will not consider it on this motion. *See* Cal. Rules of Court, Rule 8.1115 (other than exceptions not applicable here, "an opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action.").

witnesses from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V, cl. 2. (*See* ECF 102 ¶¶ 73-79.)[6] However, in testimony during the investigative hearing against plaintiff, Papworth indicated he thought Kline was on the line but that Kline did not want Papworth to reveal Kline's presence on the call. (ECF 92-3 at 4-5.) Moreover, plaintiff notes that in the context of a civil suit, *Baxter v. Palmigiano*, 425 U.S. 308 (1975), an "adverse inference" may be drawn from a party's refusal to answer questions by invoking the Fifth Amendment. (ECF 106.)

In civil cases, an adverse inference from invocation of the Fifth Amendment may be drawn only where the movant has also provided separate probative evidence to support the inference. As the Ninth Circuit explained in *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000), "[t]he *Baxter* holding is not a blanket rule that allows adverse inferences to be drawn from invocations of the privilege against self-incrimination under all circumstances in the civil context. Rather, lower courts interpreting *Baxter* have been uniform in suggesting that the key to the *Baxter* holding is that such an adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer." Where independent evidence is produced, an adverse inference is permissible but not inevitable. *Id.* at 1265 ("[U]nder certain circumstances, within the civil framework, because of the constitutional nature of the right implicated, an adverse inference from an assertion of one's privilege not to reveal information is too high a price to pay."). Courts are to examine instances where an adverse inference is suggested on a case-by-case basis, and retain "flexibility to fashion and develop rules pertaining to the privilege." *Id.*  For instance, where the movant has provided independent probative evidence, a court may shift the burden to defendant to avoid summary judgment. *See SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998).

Here, evidence of Kline's presence on the call is presented in the form of Papworth's testimony at the investigative hearing. (ECF 92-3 at 4-5.) However, there is a dispute

---

[6] Defendants object to the court's considering Papworth's and Kline's invocation of the Fifth Amendment right against self-incrimination on the grounds that to do so would unduly prejudice their invocation of that right. As explained below, this objection is without merit.

over whether evidence of Papworth's investigation testimony is properly before the court.[7]
California provides an absolute privilege to communications made in any "(1) legislative
proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or
(4) in the initiation or course of any other proceeding authorized by law and reviewable [by
mandate]." CAL. CIV. CODE § 47(b); *see Silberg v. Anderson*, 50 Cal. 3d 205 (1990). "The usual
formulation is that the privilege applies to any communication (1) made in judicial or
quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve
the objects of the litigation; and (4) that have some connection or logical relation to the action."
*Silberg*, 50 Cal. 3d at 212. "In order to achieve [the] purpose of curtailing derivative lawsuits, we
have given the litigation privilege a broad interpretation." *Action Apartment Ass'n, Inc. v. City of
Santa Monica*, 41 Cal. 4th 1232, 1241 (2007). The privilege attaches not only to communications
during actual proceedings, but also to communication in preparation for or in furtherance of a
proceeding. *See Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006).

   The parties do not address whether the litigation privilege applies to Papworth's
testimony in the contractually negotiated termination investigation hearings. *See Moore v.
Conliffe*, 7 Cal. 4th 634, 643 (1994) (holding that the litigation privilege applies to "a private,
contractual arbitration proceeding"); *Rivera v. National R.R. Passenger Corp.*, No. C 99–04003
SI, 2004 WL 603587, at *6 (N.D. Cal. Mar. 22, 2004) ("Grievance procedures governed by a
CBA are considered proceedings authorized by law and reviewable by mandate." (quotation
omitted)); *Ribas*, 36 Cal. 3d at 364 (applying the litigation privilege to an arbitration hearing
because it is functionally equivalent to a court proceeding). Plaintiff does not identify compelling
probative evidence other than the investigation testimony, and therefore the propriety of
considering that testimony must be resolved.

/////

---

[7] UP failed to raise the privilege in opposition to plaintiff's motion or his statement of
facts. The court, however, finds fidelity to the law outweighs the court's general disinclination to
consider arguments that are not properly raised; here the court cannot ignore the apparent
implications of the privilege for aspects of this case. *See* FED. R. CIV. P. 56(e). The court also
notes that plaintiff is the party that brought the litigation privilege to the court's attention in his
own motion for summary adjudication on defendant's affirmative defenses. (ECF 78.)

1    Applying the litigation privilege to statements made in conjunction with the

2    investigative hearing may be dispositive of both plaintiff's motion for liability on this claim as

3    well as UP's motion for an adjudication of the proper measure of damages. Each party's motion

4    thus is DENIED without prejudice. The parties are instructed to file further briefing, not to

5    exceed seven pages, addressing the scope of the privilege's application and its effects on the

6    eavesdropping claim, by April 27, 2012. FED. R. CIV. P. 56(e)(1). The court will schedule further

7    argument at that time, if necessary. No further evidentiary submissions on this question are

8    allowed without prior leave of court.

9    B.    Wrongful Termination (Plaintiff's Third Cause of Action)

10    1.    Preemption by Railway Labor Act

11    Defendant UP contends plaintiff's state law claim for wrongful termination in

12    violation of public policy is preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et

13    seq*. (ECF 67-1 at 4.) "Whether federal law pre-empts a state law establishing a cause of action is

14    a question of congressional intent." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994).

15    "Congress' purpose in passing the RLA was to promote stability in labor-management relations

16    by providing a comprehensive framework for resolving labor disputes." *Id*.; *see also Felt v.

17    Atchison, Topeka & Santa Fe Ry. Co.*, 60 F.3d 1416, 1419 (9th Cir. 1995).    Towards this

18    end, the RLA establishes dispute resolution mechanisms for two classes of claims: first, "major

19    disputes" which relate to the formation of collective bargaining agreements and concern rates of

20    pay, rules or working conditions; second, "minor disputes" which "gro[w] out of grievances or

21    out of the interpretation or application of agreements covering rates of pay, rules, or working

22    conditions." 45 U.S.C. § 151a. "Thus, 'major disputes seek to create contractual rights, minor

23    disputes to enforce them.'" *Hawaiian Airlines, Inc*., 512 U.S. at 253 (quoting *Consolidated Rail

24    Corp. (Conrail), v. Railway Labor Executives' Assn*., 491 U.S. 299, 302 (1989)).

25    Minor disputes must be resolved through mechanisms set forth in the RLA. *See

26    45 U.S.C. § 184; *Felt*, 60 F.3d at 1419. "The distinguishing feature of [a minor dispute] is that

27    the dispute may be conclusively resolved by interpreting the existing [CBA]." *Conrail*, 491 U.S.

28    at 305. "[A] minor dispute cannot involve rights that emanate from sources outside the

10

agreement." *Felt*, 60 F.3d at 1419. If a claim can be resolved without resort to the applicable

collective bargaining agreement, the claim is not a preempted "minor dispute." *See Hawaiian*

*Airlines*, 512 U.S. at 263 (noting the Court's adoption of a "contract-dependent standard for

minor disputes"). Where a plaintiff alleges his employer violated rights independent of the

applicable collective bargaining agreement, the claim is not preempted. For instance, the Ninth

Circuit has held that a state law claim for intentional infliction of emotion distress is preempted

because in order to evaluate the employer's "outrageousness" a court must look to the CBA. *See*

*Saridakis v. United Airlines*, 166 F.3d 1272, 1278 (9th Cir. 1999) (collecting cases). On the other

hand, claims involving state and federal statutory rights, and rights based in common law are not

preempted by the RLA. *See id.* ("[W]e have made clear that wrongful discharge claims based on

public policy violations are not preempted by federal labor laws because such claims are derived

from sources outside the CBA."); *Espinal v. Northwest Airlines*, 90 F.3d 1452 (9th Cir. 1996)

(holding plaintiff's disability claims were not preempted by the RLA)*; Felt*, 60 F.3d at 1420

(noting a Title VII claim exists independent of the CBA); *Cramer v. Consolidated Freightways,*

*Inc.*, 255 F.3d 683 (9th Cir. 2001) (holding a state claim for violation of the California Invasion

of Privacy Act did not require interpretation of the CBA).

       The Ninth Circuit has established a two part test to determine whether a claim is

preempted under the RLA: (1) Does the cause of action involve a right conferred upon the

employee by state law, not by a CBA? and (2) If the right exists independently of the CBA, is it

nevertheless "'substantially dependent on analysis of a collective-bargaining agreement.'"

*Burnside v. Kiewit Pacific Corp*., 491 F.3d 1053, 1060 (9th Cir. 2007) (quoting *Caterpillar, Inc.*

*v. Williams*, 482 U.S. 386, 394 (1987)). The court will examine each question in turn.

                 a.      Plaintiff's alleged right is based in state law

       In *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980), the California

Supreme Court explored the nature of the remedy when an employer has fired an at-will

employee and the employee claims the discharge followed his refusal to participate in a price

fixing scheme. In that case, the employee alleged he was fired after such a refusal. *Id*. at 169.

The court concluded that "when an employer's discharge of an employee violates fundamental

principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Id*. at 170.

In subsequent decisions, the California Supreme Court has explored the contours of the *Tameny* doctrine. In *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1090 (1992), *overruled on other grounds by Green v. Ralee Eng. Co.*, 19 Cal. 4th 66, 80 n.6 (1998), the Court said that "the policy in question must involve a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer." In *Stevenson v. Superior Court*, 16 Cal. 4th 880, 894 (1997), the California Supreme Court developed a four part test for determining whether a particular policy will support a discharge claim: the policy must be "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." In *Green*, the court recognized that the policy underlying a discharge claim may be based in federal statutory or administrative law. *Green*, 19 Cal. 4th at 87-88.

Plaintiff claims that he was fired in retaliation for reporting his alleged July 28, 2007, injury to UP. (ECF 90 at 18-21.) In his view, his termination violated policies set forth in (1) California Labor Code section 132a, which prohibits discrimination against workers injured on the job; (2) 49 U.S.C. § 20109(a)(4), (b)(1)(A), which protects workers who report unsafe working conditions; and (3) 40 C.F.R. § 225.13, which requires reporting certain on-the-job injuries. (ECF 90 at 16-17.) Each of these provides a separate statutory articulation of public policy that satisfies the *Tameny* requirement. As such, plaintiff's wrongful termination claim is established in state law.

> b.    Plaintiff's wrongful termination claim does not require interpretation of the CBA

Plaintiff argues that UP's proffered reason for his termination is pretextual. Defendant UP argues that (1) it is impossible to determine whether plaintiff was properly terminated without examining whether the termination procedures complied with the CBA; and (2) even if the claim is not preempted, plaintiff has failed to show a material issue of fact

1   regarding pretext. To show pretext, plaintiff must present evidence suggesting that UP did not

2   believe the reason it gave for plaintiff's discharge. *See Hobbs v. City of Chicago*, 573 F.3d 454,

3   461 (7th Cir. 2009) (pretext is a phony reason for some action); *Kouvchinov v. Parametric Tech.*

4   *Corp.*, 537 F.3d 62, 67 (1st Cir. 2008) (in assessing pretext, focus is on the mindset of the actual

5   decisionmaker; pretext means deceit used to cover one's tracks); *Argo v. Blue Cross and Blue*

6   *Shield of Kansas*, 452 F.3d 1193, 1203 (10th Cir. 2006) (to show pretext, a plaintiff must

7   produce evidence of weaknesses, implausibilities, inconsistencies or contradictions in the

8   employer's proffered reason for discharge so that a factfinder could find the latter unworthy of

9   credence).

10          Plaintiff hinges much of his wrongful termination claim on perceived infirmities

11  in the investigation and termination process, which he believes evinces pretext. (*See* ECF 90 at

12  17-23.) He relies on a line of cases from the California Supreme Court in which that court

13  inferred an implied in fact contract to be terminated only for "good cause" in certain at-will

14  employment situations. *See Cotran v. Rollins Hudig Hall Intl., Inc.*, 17 Cal. 4th 93 (1998). In

15  *Cotran*, the California Supreme Court held that when an employee hired under an implied

16  agreement not to be discharged except for good cause is fired for misconduct, a jury considering

17  a suit stemming from the discharge must determine whether "the factual basis on which the

18  employer concluded a dischargeable act had been committed was reached honestly, after an

19  appropriate investigation and for reasons that are not arbitrary or pretextual." *Cotran*, 17 Cal.4th

20  at 107. This court has previously held that a *Cotran* analysis is not called for in analyzing

21  *Tameny* wrongful termination claims. *See Gilmore v. Union Pacific R. Co.*, CIV No. S–09–2180

22  KJM DAD, 2012 WL 761603 (E.D. Cal. Mar. 8, 2012). Plaintiff is not an at-will employee and

23  he is entitled to only those procedural protections conferred by the relevant CBA. As such,

24  plaintiff cannot attack the contractually negotiated termination procedures in the CBA without

25  thereby conceding his claim is preempted. An employer's failure to provide the separate

26  procedural protections discussed in *Cotran* has no bearing on the viability of a wrongful

27  termination claim. *Id*. at *5 ("the court rejects plaintiffs' attempt to relitigate the investigation

28  and hearing in the guise of establishing pretext").

The essential facts here are not in dispute: plaintiff felt a pain in his back while pulling switch 15 on June 28, 2007. Soon thereafter he met with the UP claims agent to discuss his job capabilities. At that time, and again a year later, UP retained a company to perform surveillance on plaintiff. UP relied upon the 2008 video of plaintiff to decide that plaintiff dishonestly represented himself as more limited than he was in fact. UP began termination proceedings in which plaintiff refused to testify.

Plaintiff relies on the following pieces of circumstantial evidence to support his claim that UP's proffered reason for terminating him was pretextual based on the following: (1) On July 28, 2007, prior to plaintiff's asserting any claim, UP claims agent Goodwill wrote to Doctor Shetzline stating, "[Plaintiff] has presented a claim pursuant to the Federal Employers Liability Act for injury(s) which he alleges to have occurred during the course and scope of his employment with Union Pacific Railroad Company." (ECF 95-4 at 15); (2) abundant evidence of plaintiff's actual injury (*see* ECF 90 at 19); (3) plaintiff was charged with dishonesty in reporting an injury as opposed to exaggerating his injury later (ECF 90 at 21); (4) UP organized surveillance in 2007, then waited a year and had plaintiff videotaped again (ECF 90 at 20); and (5) the ultimate decisionmaker and key participant in the investigation proceedings, Ray Perry, had a financial incentive to have plaintiff terminated. (*Id.*)  Claims agent Goodwill's letter to Dr. Shetzline alone is sufficient to create a triable issue of fact as to pretext. In that letter, Goodwill indicates that plaintiff has submitted a FELA claim a mere month after the event and more than a year before his eventual termination. In his deposition, Goodwill admitted he had not heard that plaintiff had initiated litigation against UP at that point. (ECF 93-2 at 25.) Moreover, the letter supports an inference that Goodwill viewed plaintiff through the lens of possible liability based on his recent injury. When viewed in conjunction with plaintiff's medical evidence that he was genuinely injured, a reasonable fact finder could conclude that UP terminated plaintiff based on his reporting his on-the-job injury.

/////
/////
/////

14

The court need not analyze the parties' remaining factual disputes with respect to this claim. UP's motion for summary judgment is DENIED.[8]

C. Federal Employers' Liability Act (Plaintiff's First Cause of Action)

The Federal Employers' Liability Act ("FELA") provides a common law negligence action to railroad employees injured "by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51. The Federal Railroad Safety Act ("FRSA") aims to promote safety in railroad operations "and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The FRSA has an express preemption provision that provides "[l]aws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106. "A State may adopt or continue in force a law, regulation, or order related to railroad safety . . . until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2).Where an FRSA regulation "substantially subsumes" the subject matter of the state law negligence claim, the claim is preempted. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). For instance, in *Easterwood*, a truck driver died in a collision with a train at a crossing. His widow sued under Georgia law alleging the train was traveling too fast and should have maintained warning devices at the crossing. The Court held that the FRSA regulations relating to train speed preempted the state negligence claim. *Id*. at 676.

Three federal courts of appeals have held that FRSA regulations not only preempt state law claims, but also preclude federal tort claims under FELA. *Nickels v. Grand Trunk Western Railroad, Inc*., 560 F.3d 426, 428 (6th Cir. 2009); *Lane v. R.A. Sims, Jr., Inc*., 241 F.3d 439, 443 (5th Cir. 2001); *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 776 (7th Cir. 2000).

---

[8] Defendants also argue they are entitled to summary adjudication of damages as not proper for plaintiff's wrongful termination claim. (ECF 67-1 at 9.) The only argument offered in the opening brief is that punitive damages cannot be awarded because the claim is preempted. As the court finds plaintiff's claim is not preempted, it does not consider the other arguments defendants advance for the first time in the reply brief.

1    This issue is not settled within the Ninth Circuit, however. *See Allenbaugh v. BNSF Ry. Co.*, No.

2    CIV-09-3086-LRS, 2011 WL 2182430, at *6 (E.D. Wash. June 6, 2011) (questioning

3    applicability of *Nickels* in Ninth Circuit); *Abromeit v. Montana Rail Link, Inc.*, No. CR 09-93-M-

4    DWM, 2010 WL 3724425, at *4-5 (D.Mont. Sept. 15, 2010) (same). *Allenbaugh* and *Abromeit*

5    rely on *Southern Pacific Transp. Co. v. Public Utilities Comm'n of State of Cal.*, 820 F.2d 1111

6    (9th Cir. 1987) (per curiam), which predates *Easterwood* and which affirmed a district court

7    opinion that held California's track clearance rules were not preempted. The court in *Southern*

8    *Pacific* stated "California's track clearance and walkway regulations have not been preempted by

9    federal rule, regulation, order or standard covering the same subject matter as these state

10   requirements." *Id*. at 1111.

11          Here, FRSA regulations govern switches. 49 C.F.R. § 213.135. Specifically, as

12   applicable to this case, the regulation provides, "Each switch stand and connecting rod shall be

13   securely fastened and operable without excessive lost motion." 49 C.F.R. § 213.135(e). UP's

14   argument in its opening brief consists of a quotation of the applicable regulation and citation to

15   two nonbinding cases. (*See* ECF 67-1 at 8-9.) It simply declares that FRSA regulations displace

16   FELA claims and proof of compliance shields a company from liability. (*Id*.)  UP has not

17   addressed the purpose of 49 C.F.R. § 213.135 and whether it is aimed at worker safety. *See Lane*,

18   241 F.3d at 444 (discussing FRSA's safety goals in support of precluding FELA claim). UP also

19   does not address the effect of preclusion analysis as opposed to preemption analysis (*see*

20   *Waymire*, 218 F.3d at 775 (dismissing preemption analysis because analyzing whether FRSA

21   precludes a FELA claim involves the interaction of two federal statutes)), or attempt to

22   distinguish adverse precedent from within the Ninth Circuit (*see, e.g., Allenbaugh, supra;*

23   *Abromeit, supra*).

24          The court finds on the record before it that UP has not carried its burden of

25   persuasion at the summary judgment stage. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

26   *Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000) ("A moving party without the ultimate burden of

27   persuasion at trial [] has both the initial burden of production and the ultimate burden of

28   /////

16

1   persuasion on a motion for summary judgment."). UP's motion for summary judgment on

2   plaintiff's first cause of action is DENIED.

3   D.      Defendant's Affirmative Defenses

4               Plaintiff seeks summary adjudication on the numerous affirmative defenses in

5   Kline's and UP's answer (for this section, "defendants").  When a plaintiff seeks summary

6   judgment on affirmative defenses, he or she "'may satisfy [the] Rule 56 burden by showing "that

7   there is an absence of evidence to support [an essential element] of the [non-moving party's]

8   case."'" *Federal Deposit Insur. Corp. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting

9   *DiCola v. SwissRe Holding (North America), Inc*., 996 F.2d 30 (2d Cir. 1993)).  While it is not

10  essential that the plaintiff negate elements of the affirmative defenses by submitting affidavits or

11  other evidence, he or she must point to something showing the absence of supporting evidence.

12              1.      Contributory Negligence (Second and Thirteenth Affirmative Defenses)

13              Defendants allege that plaintiff contributed to his own injuries and they are

14  entitled to argue comparative fault. Defendants' second affirmative defense claims that some

15  other party contributed to plaintiff's injuries. (ECF 19 at 6.) Defendants' thirteenth affirmative

16  defense alleges that third parties contributed to plaintiff's injuries. (*Id*. at 8.) In reply, plaintiff

17  argues UP is attempting to impermissibly argue assumption of risk, which is barred when a

18  plaintiff is alleging that a workplace condition caused his injury. (ECF 106 at 3-4.) Defendant

19  did not have an opportunity to reply to this argument because it was first raised in a reply brief.

20  The court does not consider arguments first set forth in a reply brief.  *See United States v.*

21  *Gianelli*, 543 F.3d 1178, 1184 n.6 (9th Cir. 2008) ( "[A]rguments raised for the first time in a

22  reply brief are generally considered waived."); *Lerma v. Arends*, No. 1:11-cv-00533-LJO-MJS,

23  2011 WL 2516173, at *5 (E.D. Cal. Jun. 22, 2011) ("It is improper for the moving party to

24  introduce new facts or different legal arguments in the reply brief than presented in the moving

25  papers.").  Summary adjudication on the second and thirteenth affirmative defenses is therefore

26  DENIED.

27  /////

28  /////

17

1        2.      Failure to State a Claim (Third & Tenth Affirmative Defenses)

2             Defendants argue that the defense of failure to state a claim shifts with the

3    procedural posture of a case and therefore they should be able to argue that plaintiff has failed to

4    allege or prove the facts necessary to support his various claims. "Failure to state a claim is not a

5    proper affirmative defense but, rather, asserts a defect in [plaintiff's] prima facie case... [and] is

6    more properly brought as a motion.*" Barnes v. AT&T Pension Ben. Plan-Nonbargained*

7    *Program*, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010). Summary adjudication with respect

8    these affirmative defenses is GRANTED.

9        3.      Superseded by Federal Law (Sixth Affirmative Defense)

10             Plaintiff moves for summary adjudication of the defense that his eavesdropping

11    claim is superseded by federal wiretapping laws. Defendants' sixth affirmative defense states,

12    "Plaintiff's complaint is preempted by superseding federal law." (ECF 19 at 7.) Defendants

13    oppose granting this motion on the grounds that plaintiff's eavesdropping claim is preempted by

14    the RLA; they do not argue it is superseded by any other federal law. Accordingly, plaintiff's

15    motion is GRANTED solely with respect to preemption of the eavesdropping claim by Federal

16    wiretapping law.

17        4.      Statute of Limitations (Eighth Affirmative Defense)

18             Defendants do not oppose summary adjudication of this affirmative defense.

19    Accordingly, it is GRANTED.

20        5.      Laches & Unclean Hands (Ninth Affirmative Defense)

21             Defendants argue that plaintiff refused to participate in the investigative hearing,

22    thereby preventing them from addressing his claims in that venue as opposed to litigation.

23    Plaintiff argues that in order to assert laches defendants must show some prejudice, and that

24    plaintiff's timely suit shows that defendants are not prejudiced. According to defendants, they

25    are prejudiced by having to litigate claims that could have been resolved in the earlier hearing.

26    "Laches is an equitable time limitation on a party's right to bring suit." *Boone v. Mech.*

27    *Specialties Co.*, 609 F.2d 956, 958 (9th Cir.1979). A party asserting laches must prove it was

28    prejudiced as a result of plaintiff's delay. *Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d

1   829, 835 (9th Cir. 2002). The parties do not brief whether a party's failure to participate in

2   administrative hearings can constitute laches. On the record before it, the court declines to rule

3   on this defense. Plaintiff's motion for summary adjudication of this defense is DENIED.

4          The doctrine of unclean hands bars a plaintiff from seeking equitable relief "only

5   where some unconscionable act of [the plaintiff] has immediate and necessary relation to the

6   equity that he seeks in the matter in ligation." *See Keystone Driller Co. v. General Excavator*

7   *Co.,* 290 U.S. 240, 245 (1933).  Plaintiff is not seeking equitable relief; summary judgment on

8   this defense thus is appropriate.

9          6.     Exhaustion (Fourteenth Affirmative Defense)

10          Defendants contend that plaintiff filed suit before exhausting administrative

11  remedies, namely by appealing his adverse termination to a Public Law Board. The court finds

12  each party's briefing on this issue insufficient to compel summary adjudication of this defense,

13  and so it is DENIED.

14          7.     Waiver and Estoppel (Fifteenth & Sixteenth Affirmative Defenses)

15          An answer must "set forth the circumstances giving rise to the purported

16  estoppel." *Mission Housing Development Co. v. City & County of San Francisco*, 59

17  Cal.App.4th 55, 75 (1997).  Here, the answer simply says that "each cause of action . . . is barred

18  by the doctrine of estoppel." (ECF 19 at 8.)   Summary adjudication with respect to estoppel is

19  appropriate, and is GRANTED.

20          8.     Preemption by RLA (Sixth & Seventeenth Affirmative Defenses)

21          As discussed above, plaintiff's wrongful termination claim is not preempted by

22  the RLA. That said, given plaintiff's attacks on the investigative and termination procedures,

23  actions that do implicate the RLA, the court declines to summarily adjudicate this defense.

24          9.     Litigation Privilege (Twenty-First Affirmative Defense)

25          As discussed above, the litigation privilege applies to Papworth's testimony at the

26  investigative hearing and Kline's discussions, if any, related to the hearing. Plaintiff's motion is

27  DENIED with respect to this affirmative defense.

28  /////

10.     Preemption of the FELA Claim (Sixth, Twenty-third and Twenty-fourth Affirmative Defenses)

For the reasons set forth above, the court DENIES summary adjudication on either the FELA or RLA affirmative defense claims.

11.     Mootness (Nineteenth Affirmative Defense)

On the record before it, the court finds that plaintiff's claims are not moot.

12.     Election of Remedies (Twenty-fourth Affirmative Defense)

Title 49 U.S.C. § 20109(f) provides "An employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the railroad carrier." Plaintiff claims he has only asserted a claim for wrongful termination and therefore he is entitled to summary adjudication of this defense. UP's briefing is not clear but appears to suggest that plaintiff must identify only one public policy to support his wrongful termination claim. Plaintiff however cites this section as an embodiment of federal public policy in order to buttress his wrongful termination claim. The state law provisions he cites to similarly support his claim are not preempted. *See Gonero v. Union Pacific R. Co., No.*, CIV. 2:09-2009 WBS JFM, 2009 WL 3378987 (E.D. Cal. Oct. 19, 2009) ("State common law wrongful termination claims are not displaced simply because Congress has also provided a statutory right against retaliation. Each right has legally independent origins and, absent Congressional intent to preempt state law claims, is equally available to an aggrieved employee.") (citation omitted)). At the same time, a wrongful termination claim based on an RLA violation may constitute "another provision of law" under the election provision. *See id.* at *5. On the current record, plaintiff's motion is DENIED.

/////
/////
/////
/////
/////
/////

20

Accordingly, for the foregoing reasons, the court ORDERS the following:

1. Papworth's motion for summary judgment is GRANTED;

2. Plaintiff's motion for summary judgment is DENIED with respect to the eavesdropping claim; and GRANTED with respect to the following affirmative defenses: third, sixth (solely with respect to federal wiretapping law), eighth, ninth (solely as to unclean hands), tenth and sixteenth, but denied as to the other affirmative defenses;

3. UP's motion for summary judgment is DENIED in full; and

4. The parties are directed to file the briefing described in the body of this order by April 27, 2012.

DATED:  March 31, 2012.

UNITED STATES DISTRICT JUDGE