UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROBERT L.  POWELL,

           Plaintiff,

    v.

UNION PACIFIC RAILROAD
COMPANY, *et al.*,

           Defendants.

_____/

NO. CIV. S-09-1857 KJM-CKD

ORDER

        On March 31, 2012, the court issued its order on the parties' cross motions for summary judgment under Federal Rule of Civil Procedure ("Rule") 56, granting summary judgment in favor of defendant Tyler Papworth and denying summary judgment to Union Pacific on several employment claims. The court reserved judgment regarding plaintiff Robert Powell's eavesdropping claim and ordered further briefing on the application of the litigation privilege under California Civil Code section 47(b). For the reasons set forth below, the court grants plaintiffs' motion for summary adjudication on liability and grants defendant Union Pacific's motion for summary adjudication on the measure of damages.

/////

/////

/////

/////

/////

1    I.    <u>FACTUAL BACKGROUND</u>[1]

2         Ray Perry is the superintendent for Union Pacific's ("UP") Stockton yard where

3    Powell worked. (ECF 102 ¶ 71.)  Perry is the UP employee who initiated the investigation into

4    Powell for dishonesty and who ultimately decided to fire Powell. (ECF 102 ¶ 128.)

5         From 2001 to November 2010, Tyler Papworth was plaintiff's supervisor at UP.

6    (ECF 87-2 ¶ 11.) On June 8, 2008, around 3:00 p.m., Papworth called plaintiff to discuss his

7    physical capabilities (the "call"). (ECF 117 ¶¶ 2, 13.) Both Papworth and Brian Kline were

8    officers with UP at the time of the call. (*Id*. ¶ 1.) Kline provided Papworth with questions to ask

9    plaintiff. (ECF 87-2 ¶ 14.)  Based on the differences between what plaintiff said he was capable

10   of on the call and a surveillance video of plaintiff with his family, Perry, in conversations with

11   Kline and others, determined to charge plaintiff with dishonesty and begin termination

12   proceedings. (*See* ECF 93-3 at 6–7.)

13        A disciplinary investigation performed in conformity with the Collective

14   Bargaining Agreement ("CBA"), later commenced on July 28, 2008. (ECF 106-1 at 11.)

15   Papworth testified to the contents of his call with plaintiff at the disciplinary hearing. Kline did

16   not testify. In Papworth's testimony, he makes clear he thought Kline was on the line when he

17   spoke with plaintiff. (ECF 92-3 at 4–5.)  On August 25, 2008, plaintiff was terminated. (*Id*. at

18   11-12.) Plaintiff then appealed his dismissal to the Railway Labor Board, which affirmed his

19   termination. (*Id*. at 13.)

20   II.   <u>LEGAL STANDARD</u>

21        A court will grant summary judgment "if . . . there is no genuine dispute as to any

22   material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

23   The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

24   resolved only by a finder of fact because they may reasonably be resolved in favor of either

25   party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

26   /////

27

28        [1] The court recounts only those facts that are relevant to the remaining claim. The facts
     and procedural history are more fully recounted in the court's previous order. (*See* ECF 125.)

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

III.    ANALYSIS

Plaintiff and Papworth each moved for summary adjudication of liability on plaintiff's claim for eavesdropping under California Penal Code § 631(a). (ECF 66-1, 78.) In this court's previous order, the court granted Tyler Papworth's motion for summary judgment because the court determined that California Penal Code section 631 did not apply to a participant to an ongoing communication, but only to unannounced third parties. (ECF 125.) The court now considers whether UP and Kline may be liable if Kline, as a third party, listened in on the call. The court also addresses the motion by UP, joined by Kline, for summary

/////

1  judgment on the proper measure of damages applicable to plaintiff's eavesdropping claim. (ECF

2  66, 67-1.)

3        A.    <u>Liability</u>

4        California Penal Code § 631(a) criminalizes eavesdropping and broadly

5  proscribes third party access to ongoing communications. *See* CAL. PEN. CODE § 631(a); *Ribas*

6  *v. Clark*, 38 Cal. 3d 355, 359 (1985).  Defendants UP and Kline contend there is no evidence that

7  Kline eavesdropped on the call between Papworth and Powell. When asked in depositions

8  whether Kline listened in on the call, Papworth and Kline each invoked their Fifth Amendment

9  right under the United States Constitution, which prevents witnesses from being "compelled in

10  any criminal case to be a witness against himself." U.S. Const. amend. V, cl. 2. (*See* ECF 102 ¶¶

11  73–79.)  Plaintiff argues that in the context of a civil suit, *Baxter v. Palmigiano*, 425 U.S. 308

12  (1975) allows an "adverse inference" to be drawn from a party's refusal to answer questions by

13  invoking the Fifth Amendment. (ECF 106.)

14        In civil cases, an adverse inference from invocation of the Fifth Amendment may

15  be drawn only where the movant has also provided separate probative evidence to support the

16  inference. As the Ninth Circuit explained in *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d

17  1258, 1264 (9th Cir. 2000),

18          [t]he *Baxter* holding is not a blanket rule that allows adverse
19          inferences to be drawn from invocations of the privilege against
        self-incrimination under all circumstances in the civil context.
        Rather, lower courts interpreting *Baxter* have been uniform in
20          suggesting that the key to the *Baxter* holding is that such an
        adverse inference can only be drawn when independent evidence
21          exists of the fact to which the party refuses to answer.

22  Where independent evidence is produced, an adverse inference is permissible but not inevitable.

23  *Id*. at 1265 ("[U]nder certain circumstances, within the civil framework, because of the

24  constitutional nature of the right implicated, an adverse inference from an assertion of one's

25  privilege not to reveal information is too high a price to pay."). Courts are to examine instances

26  where an adverse inference is suggested on a case-by-case basis, and retain "flexibility to fashion

27  and develop rules pertaining to the privilege." *Id*.  For instance, where the movant has provided

28  independent probative evidence, a court may shift the burden to the opposing party to avoid

1   summary judgment. *See SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). Here, evidence of

2   Kline's presence on the call is presented in the form of Papworth's testimony at the investigative

3   hearing. (ECF 92-3 at 4–5.)

4          The parties disagree over whether Papworth's investigation testimony is properly

5   before the court or whether it is barred from consideration by California's litigation privilege. As

6   plaintiff points out, California Civil Code section 47(b) operates as a limitation on liability, not a

7   bar to the admission of evidence. *See Flatley v. Mauro*, 39 Cal. 4th 299, 325 (2006); *Oren Royal*

8   *Oaks Venture v. Greenberg, Bernhard, Weiss & Karma*, 42 Cal. 3d 1157, 1163 (1986). The court

9   may consider Papworth's hearing testimony to determine whether Kline eavesdropped on the

10  call without Powell's knowledge in violation of Section 631.[2]

11         Papworth's investigative hearing testimony makes clear he believed Kline was

12  listening in on the call and that he did not tell Powell that Kline was listening in. (ECF 92-3 at

13  4–5.) At that hearing, Papworth was asked, "At the time you called Mr. Powell, was there

14  anybody else on the phone line listening to the Q and A of Mr. Powell?" (*Id.* at 5.) Papworth

15  answered affirmatively and indicated Kline was on the phone line. (*Id.*) Defendants argue that

16  Papworth also admitted he was not absolutely certain that Kline was on the phone and therefore

17  a material issue of fact remains. (ECF 88 at 2.) Defendants suggest that plaintiff must provide

18  definitive evidence of eavesdropping. In the present case, where plaintiff has provided

19  compelling evidence to corroborate his allegations and defendants possess the only information

20  that could further buttress the claim, drawing an adverse inference from Papworth's and Kline's

21  invocation of their Fifth Amendment rights is appropriate. The court finds there is no disputed

22  issue of material fact and plaintiff is entitled to summary adjudication on Kline's liability for

23

24  ───────────────

25         [2] To the extent defendants seek to apply the privilege to conduct surrounding the call, illegal activity under state law cannot be considered part of a valid investigation and therefore would not be covered by the privilege. *Cf. Cramer v. Consolidated Freightways, Inc.*, 255 F.3d

26  683, 695–96 (9th Cir. 2001) (holding a CBA agreement could not permit illegal acts and that a California invasion of privacy claim was not preempted). By contrast, internal discussions, albeit

27  based on information gained from an otherwise illegal act, would be protected by the privilege. *See Flatley*, 39 Cal. 4th at 322 ("The litigation privilege has been applied in numerous cases

28  involving fraudulent communication or perjured testimony." (quotations omitted)). Liability for subsequent discussion based on eavesdropping is discussed below.

eavesdropping under section 631 for listening in on the June 8 call. Defendant does not contest that UP is vicariously liable for Kline's violation if he is found liable. *See* CAL. PENAL CODE § 631(a); *Marich v. MGM/US Telecommunications, Inc.*, 113 Cal. App. 4th 415, 425 (2003). Plaintiff's motion for summary adjudication on liability for his fourth cause of action against Kline and UP is GRANTED.

B.    Damages

Defendants move for summary adjudication on the proper measure of damages with respect to plaintiff's eavesdropping claim. (ECF 67-1 at 14-15.)

1.    Actual Damages

California Penal Code section 637.2 provides: "(a) Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts: (1) Five thousand dollars ($5,000) [or] (2) Three times the amount of actual damages, if any, sustained by the plaintiff." Section 631 provides liability not only for the act of eavesdropping but also for anyone "who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way" information obtained through violation of section 631. CAL. PENAL CODE § 631(a). Therefore, defendants may be liable for actual damages caused by the publication of illicitly gained information. Defendants argue that no actual damages are attributable to a violation of section 631 because Kline did not testify at the hearing and there is no causal nexus between the eavesdropping and plaintiff's subsequent termination. (ECF 67-1 at 14-15.) Plaintiff argues that Kline discussed the contents of the conversation with Perry, the ultimate decisionmaker, and therefore it can be inferred that Kline's direct contact with the decisionmaker directly affected the outcome of the termination proceedings.

Kline and Perry admittedly discussed whether plaintiff should be charged with dishonesty (*see* ECF 93-3 at 6), and that decision, in turn, hinged on the contents of the call. (*See* ECF 93-3 at 7.) Therefore, if Kline's discussions with Perry are not shielded by Section 47(b), there is a triable issue of fact as to whether actual damages are available to plaintiff.

/////

California provides an absolute privilege to communications made in any "(1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable [by mandate]." CAL. CIV. CODE § 47(b); *see Silberg v. Anderson*, 50 Cal. 3d 205 (1990). "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg*, 50 Cal. 3d at 212. "In order to achieve [the] purpose of curtailing derivative lawsuits, we have given the litigation privilege a broad interpretation." *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007). The privilege attaches not only to communications during actual proceedings, but also to communication in preparation for or in furtherance of a proceeding. *See Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006).[3] According to defendants, statements made by Kline during the investigation are protected because they occurred in the context of a contractually negotiated investigation proceeding. *See Moore v. Conliffe*, 7 Cal. 4th 634, 642 (1994) (holding that the litigation privilege applies to "a private, contractual arbitration proceeding"); *Ribas*, 38 Cal. 3d at 364 (applying the litigation privilege to an arbitration hearing because it is functionally equivalent to a court proceeding).

The Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq*., establishes procedures by which employees and carriers settle "minor" disputes based on the terms of a given CBA, and "major" disputes, related to the formation of a CBA. *See* 45 U.S.C. § 184; *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). "Minor disputes initially must be dealt with through a

---

[3] Plaintiff suggests the act of eavesdropping is noncommunicative and therefore the litigation privilege should not apply. (ECF 106 at 9–10.) A "threshold issue in determining the applicability" of the litigation privilege is whether the defendant's conduct was communicative or noncommunicative. *Kimmel v. Goland*, 51 Cal. 3d 202, 211 (1990). "[T]he key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." *Rusheen*, 37 Cal. 4th at 1058. Plaintiff would prevail if his injuries could be traced to illicit eavesdropping; however, here he claims the injuries resulted from Kline discussing his overheard conversation with other UP employees engaged in the termination investigation and hearing process, which conduct is communicative.

1   railroad's internal dispute resolution processes, and if not settled there, may be submitted to a

2   division of the Adjustment Board, or to a Public Law Board, which is an arbitration board

3   chosen by the parties." *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 563

4   (1987).  The operative point here is that Congress has seen fit to establish a comprehensive

5   process by which employee disputes are handled; that process begins with the procedures

6   provided for in the relevant CBA and culminates with judicially-styled proceedings. *Cf. Brennan*

7   *v. Tremco Inc.*, 25 Cal. 4th 310, 315 (2001) ("When . . . the parties choose private nonjudicial

8   arbitration, they typically expect their dispute will be resolved without necessity for any contact

9   with the courts." (quotation omitted)). As discussed below, California precedent suggests the

10  privilege attaches to such proceedings under section 47(b)(2) as a judicial proceeding.[4]

11          In *Ribas*, an attorney listened in on a call between his client and her husband in

12  violation of section 631, then later testified to the contents of that call in an arbitration. *Ribas*, 38

13  Cal. 3d at 364. Plaintiff in that case sought damages resulting from the attorney's testimony at

14  the arbitration because he unlawfully obtained that information as a third party. The court

15  explained that "an arbitration hearing falls within the scope of [the litigation] privilege because

16  of its analogy to a judicial proceeding" and "will defeat claims of invasion of privacy." *Id*. The

17  court concluded "to the extent plaintiff alleges in his complaint that he suffered actual injury

18  solely as a result of defendant's testimony at the arbitration hearing, his cause of action under

19  Penal Code section 637.2 must fail." *Id*. at 365. Nevertheless, the court allowed plaintiff to

20  "pursue his statutory remedy of a civil lawsuit for $3,000, even though the judicial privilege bars

21  his recovery for the only actual damage he claims to have suffered." *Id*.

22  /////

23

24          [4]  Defendants suggest the investigation hearing is covered by section 47(b)(4) which, in

25  turn, hinges on whether a carrier's termination decision is reviewable by a writ of mandate.
    *Rivera v. National R.R. Passenger Corp*., No. C 99–04003 SI, 2004 WL 603587, at *6 (N.D.

26  Cal. Mar. 22, 2004) ("Grievance procedures governed by a CBA are considered proceedings
    authorized by law and reviewable by mandate." (quotation omitted)). Given the preemptive

27  scope of the RLA, the court is not persuaded that a writ of mandate could issue based on a
    termination investigation. *See Hawaiian Airlines, Inc.*, 512 U.S. at 260.  Because the

28  communications are protected under section 47(b)(2), the court need not consider the
    applicability section 47(b)(4).

1    Later, in *Moore*, the California Supreme Court reaffirmed the *Ribas* holding

2    explicitly, stating "we conclude that this court's decision in *Ribas* constitutes a direct holding

3    that, as a general matter, the section 47 privilege applies to all arbitration proceedings." *Moore*,

4    7 Cal. 4th at 648. When citing other cases that similarly held private arbitrations are covered by

5    47(b)(2), the court relied on *Detomaso v. Pan American World Airways, Inc*., 43 Cal.3d 517

6    (1987), which held a state tort action based on conduct during grievance procedures governed by

7    the RLA to be preempted. *Moore* summarized *Detomaso* as holding that "statements made in the

8    investigation stage of labor arbitration proceedings are privileged under federal law." *Moore*,

9    7 Cal. 4th at 651. The clear implication is that grievance procedures governed by a CBA in

10   accordance with the RLA qualify as the type of privately contracted arbitration to which section

11   47(b)(2) applies.[5]

12        Because the litigation privilege applies to any communications that Kline

13   participated in the context of the investigation, he cannot be held liable for actual damages that

14   resulted from those communications. UP and Kline's motion for summary adjudication that

15   actual damages are not warranted is GRANTED, and therefore plaintiff is limited to recovering

16   statutory damages.

17        2.    Punitive Damages

18        Defendants also seek summary adjudication of plaintiff's non-entitlement to

19   punitive damages. (ECF 67-1 at 14–15.) Other than mentioning punitive damages along with his

20   argument for actual termination damages, plaintiff does not separately argue why the statutory

21   damages remedy is inadequate. In *Turnbull & Turnbull v. ARA Transportation, Inc*., the court

22   declined to award punitive damages under section 637.2 because, "when a new right, not

23   existing at common law, is created by statute and a statutory remedy for the infringement thereof

24

25   _____

26        [5] As an alternative basis for the court's holding, statements made within the confines of
     an RLA-governed CBA grievance proceeding are not actionable as state torts. *See Hyles v.
     Mensing*, 849 F.2d 1213, 1217 (9th Cir. 1988) ("as a matter of federal law, statements that are

27   made in grievance proceedings established by a CBA and are not published to persons lacking
     legitimate interests in them are privileged and may not support a state tort claim.");

28   *Lalawai-Cruz v. Hawaiian Airlines*, 416 Fed. Appx. 643, 646 (9th Cir. 2011) ("Statements made
     in the course of grievance-related proceedings are privileged under the RLA . . .").

1  is provided, such remedy is exclusive of all others unless the statutory remedy is inadequate."

2  219 Cal. App. 3d 811, 826–27 (1990). Plaintiff has not shown or argued that his statutorily

3  provided damages are inadequate. As such, summary judgment is appropriate on this issue.

4  Defendants' motion for summary judgment of plaintiff's prayers for actual

5  termination damages and punitive damages is GRANTED.

6  IV.   <u>SETTLEMENT</u>

7  The parties have not yet attended a settlement conference. The court hereby refers

8  them to settlement conference prior to the final pretrial conference and the hearing of argument

9  on motions in limine. A settlement conference is hereby scheduled with Judge Kendall Newman

10 on **September 7, 2012,** at 9:00 a.m. Counsel are instructed to have a principal with full

11 settlement authority present at the Settlement Conference or to be fully authorized to settle the

12 matter on any terms. The parties are directed to exchange non-confidential settlement conference

13 statements seven (7) days prior to this settlement conference. These statements shall

14 simultaneously be delivered to the Court using the following email address:

15 kjnorders@caed.uscourts.gov. Defendant shall either mail or deliver his settlement statement to

16 the Clerk's Office, located on the 4th floor. If a party desires to share additional confidential

17 information with the Court, they may do so pursuant to the provisions of Local Rule 270(d) and

18 (e). Waivers will be required if not previously filed.

19 V.   <u>CONCLUSION</u>

20 Based on the foregoing, the court orders as follows:

21 1.   Plaintiff's motion for summary adjudication of defendant Kline's and

22 UP's liability for eavesdropping is GRANTED; and

23 2.   Defendants' motion for summary adjudication of plaintiff's non-

24 entitlement to actual and punitive damages is GRANTED.

25 Regarding scheduling, the court further orders:

26 1.   A settlement conference is scheduled before Judge Newman on September

27 7, 2012, at 9:00 a.m.;

28 /////

1     2.     A Final Pretrial Conference is scheduled before the undersigned for

2  January 10, 2013, at 3:30 p.m.; and

3     3.     Trial is scheduled for April 15, 2013, at 9:00 a.m.

4         IT IS SO ORDERED.

5  DATED:  August 21, 2012.

6

7

8  _____
   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28