UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ROBERT L. POWELL, | NO. CIV. 2:09-1857 WBS CKD |
| Plaintiff, | |
| v. | ORDER DENYING MOTION TO SEPARATE TRIAL |
| UNION PACIFIC RAILROAD COMPANY, et al., | |
| Defendants. | |

----oo0oo----

After cross motions for summary judgment, plaintiff Robert L. Powell has four remaining claims against Union Pacific Railroad Company ("Union Pacific"): (1) negligence in violation of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. 51 § et. seq.; (2) failure to maintain track switches in a safe condition in violation of the Federal Railroad Safety Act

1

1  ("FRSA"), 49 U.S.C. § 20101 et. seq.;[1] (3) retaliation and
2  wrongful termination in violation of public policy; and (4)
3  intentional infliction of emotional distress.  (See Mar. 31, 2012
4  Order (Docket No. 125); Aug. 22, 2012 Order (Docket No. 130).)
5  The court granted summary judgement for plaintiff on his claim
6  for eavesdropping in violation of California's Invasion of
7  Privacy Act as set forth in California Penal Code section 630,
8  et. seq., as to defendants Union Pacific and Brian Kline
9  ("Kline").  (Aug. 22, 2012 Order.)  Presently before the court is
10 Union Pacific and Kline's (collectively, "defendants") motion to
11 separate trial pursuant to Federal Rule of Civil Procedure 42(b).
12         To briefly recount the relevant facts--provided in more
13 detail in the court's orders of March 31, 2012, and August 22,
14 2012--on June 28, 2007, plaintiff was responsible for aligning
15 switch 15 in the Stockton rail yard, which required him to "throw
16 the switch."  (Mar. 31, 2012 Order at 2.)  According to
17 plaintiff, he felt a pain in his back while throwing the switch.
18 (Id.)  He reported the injury by filling out a report and did not
19 return to work as a trainman after the injury because, according
20 to him, he was unable to perform his duties at work.  (Id.)  On

---

[1] Plaintiff's First Amended Complaint is unclear as to whether plaintiff intends to rely on Union Pacific's alleged failure to comply with the FRSA and applicable regulations as a standalone claim or as a basis for showing negligence under FELA. Defendants' motion to trifurcate the trial appears to assume the latter, (see Mot. to Separate Trial at 3:16 (listing one of plaintiff's remaining claims as "FELA (strict liability)") (Docket No. 136-1)), but plaintiff's opposition states that he has a remaining claim under the FRSA, (see Opp'n at 3:5-6 (Docket No. 142).)  Plaintiff also fails to list his intentional infliction of emotional distress claim against Union Pacific as a remaining claim even though it was not resolved by either of the court's orders regarding summary judgment.  (See id. at 3:4-6.)

2

June 6, 2008, at the request of the superintendent for the Stockton rail yard, plaintiff was filmed performing activities that Union Pacific characterizes as pulling, pushing, and bending. (Id.) Based on the video, Union Pacific initiated a disciplinary investigation against plaintiff. (Id.) After his resulting termination, plaintiff appealed to the Railway Labor Board, which denied the appeal on the ground that plaintiff was dishonest in connection with being able to perform the functions of his job. (Id. at 3.)

The decision to separate a trial is a matter committed to the district court's discretion. Danjaq LLC v. Sony Corp., 263 F.3d 942, 961 (9th Cir. 2001). Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). However, "separation of issues for trial is not to be routinely ordered." Advisory Committee Notes to the 1966 Amendment to Fed. R. Civ. P. 42(b).

Defendants move to trifurcate the trial into the issues of: (1) liability as to plaintiff's FELA claim, (2) liability as to plaintiff's wrongful termination claim, (3) and damages. Defendants first argue that trifurcation will avoid confusion of the jury and prejudice to them. They contend that the jury will be confused that a finding of liability under the FELA necessitates a finding of wrongful termination. They also argue that the jury could be prejudiced in its determination of liability issues by hearing testimony on punitive damages.

3

1 Defendants also note that the nature of the damages testimony
2 will be different depending on which of plaintiff's claims the
3 jury determines in his favor and suggest that the jury could be
4 confused by hearing damages testimony that it will not use to
5 make its ultimate determination on damages.
6          Second, defendants contend that trifurcation would
7 promote judicial economy because, if the jury determines that
8 plaintiff was never injured, then there is no reason to try the
9 wrongful termination claim.  Similarly, if the jury determines
10 that Union Pacific was correct in terminating plaintiff, there
11 will be no need for additional witnesses regarding punitive
12 damages because punitive damages are not available under the
13 FELA.  Union Pacific anticipates that its numerous witnesses for
14 punitive damages will be distinct from its liability witnesses.
15          Plaintiff responds that Union Pacific ignores that its
16 justification for firing plaintiff is that he falsified the
17 extent of an on-the-job injury.  Plaintiff explains that he will
18 rely on the same lay and expert witnesses to prove both his FELA
19 personal injury claim and his wrongful discharge claim.  (See
20 Opp'n at 4-5 (listing the lay and expert witnesses plaintiff
21 intends to call for both his FELA personal injury and wrongful
22 termination claims).)  Thus, he argues that trifurcation would
23 result in duplication of testimony and multiply the required days
24 of trial.  Plaintiff also states that requiring the same doctors
25 to testify twice would cost him an additional $40,000 to $50,000
26 in trial expenses and scheduling them to testify twice would
27 present difficulties.
28          Defendants argue that plaintiff will not need expert

4

1  medical testimony to prove his wrongful termination claim because
2  for a <u>Tameny</u> claim,[2] "the inquiry is whether [p]laintiff's
3  terminati[on] 'was objectively reasonable, not objectively
4  justified.'"  (Reply 2:22-23 (quoting <u>McGrory v. Applied Signal
5  Tech., Inc.</u>, --- Cal. Rptr. 3d ----, 2013 WL 265252, at *13 (6th
6  Dist. Jan. 24, 2013)) (Docket No. 143).)  Whether plaintiff was
7  actually injured is irrelevant to that inquiry, they argue.
8           The court does not find good cause to trifurcate, or
9  even bifurcate, the trial.  First, defendants do not show that
10 failing to provide for separate trials would result in prejudice
11 to them.  Besides their bald assertions of prejudice, defendants
12 have not explained why jury instructions would be insufficient to
13 ensure that the jury understands that a finding of liability for
14 Union Pacific under FELA does not necessitate a finding that
15 Union Pacific wrongfully terminated plaintiff.  They have
16 likewise not done so as to their contention that testimony on
17 punitive damages would prejudice the jury as to its liability
18 determinations.  Any prejudice defendants could encounter as a
19 result of the jury hearing evidence for punitive damages and on
20 liability for two different types of injuries can be prevented
21 with jury instructions. See <u>Hamm v. Am. Home Products Corp.</u>, 888
22 F. Supp. 1037, 1039 (E.D. Cal. 1995) ("However, the court is not
23 persuaded that the jury . . . will be unable or unwilling to
24 distinguish between evidence pertaining to liability or

---

[2]  The California Supreme Court created a claim for termination in violation of public policy in <u>Tameny v. Atlantic Richfield Co.</u>, 27 Cal. 3d 167 (1980), when it held that an "employer cannot condition employment upon required participation in unlawful conduct by the employee."  <u>Tameny</u>, 27 Cal. 3d at 178.

5

culpability and evidence pertaining to the measure of damages. . . . Moreover, any concerns about potential prejudice to the defendant may be directly addressed, and the prejudice cured, with appropriate limiting instructions.")

Second, defendants do not show that separate trials would conserve judicial resources or litigation expenses, insofar as trifurcation could result in three separate trials instead of one. Defendants contend that plaintiff's wrongful termination claims need never be heard if the jury finds that he was not injured. The court is not inclined to bifurcate or trifurcate the trial on the off-chance that the jury will make such a finding, especially given the significant amount of evidence plaintiff presented at summary judgment of injury. Moreover, even if the jury finds that plaintiff was not injured, that does not necessarily preclude a finding that, for example, Union Pacific terminated his employment in violation of the policy in 49 U.S.C. § 20109 (b)(1)(A), which protects workers who report unsafe working conditions.

Defendants' contention is one that could be made in every case where there is a potentially dispositive issue, but separating a trial in response brings its own problems:

> On the one hand, if the court does not tell the jury beforehand that further proceedings may result in the event of a verdict in favor of the plaintiff, upon returning such a verdict the jurors (believing their duties fulfilled) will receive the unexpected news that they are obliged to sit through more evidence, more instructions and yet another round of deliberations. This is simply not fair to the jury. On the other hand, if the court informs the jury at the outset that there will be further proceedings in the event of a verdict for the plaintiff, it creates a subtle incentive for the jury to return a verdict for the defendants. This would be unfair to the plaintiff.

6

Id. In light of these concerns, the court is unwilling to upset the traditional decision making process of the jury by artificially separating the issues of this case.

The court is also not persuaded that the witnesses who will testify for each claim will be so distinct that separating the liability portions of the trial would conserve judicial resources. In the court's March 31, 2012 Order, it emphasized its prior holding that the line of cases following Cotran v. Rollins Hudig Hall International, Inc., 17 Cal. 4th 93 (1998), and the standard they develop is not applicable to analyzing Tameny wrongful termination claims. (Mar. 31, 2012 Order at 13.) In McGrory, the court, relying on Cotran itself, explained that the question for the jury in examining a wrongful termination claim of an employee hired under an implied agreement not to be dismissed except for good cause is whether the employer's basis for terminating the employee "was objectively reasonable, not objectively justified." McGrory, 2013 WL 265252, at *13. Although defendants rely on this case to show that plaintiff cannot present evidence of his actual injury at trial, it does not support their position because it is an interpretation of the Cotran standard. Moreover, where, as in this case, there is a CBA governing the employment relationship, "a party may not bring a cause of action on an implied-in-fact contract where an express contract between the parties covers the same subject matter." Gilmore v. Union Pac. R. Co., Civ. No. S-09-2180, 2012 WL 3205233, at *2 (E.D. Cal. Aug. 2, 2012) (Mueller, J.).

"In order to prove a claim for discharge in violation of public policy, a plaintiff must show (1) an employee-employer

7

1 relationship (2) the termination violated public policy, (3) the
2 termination was the legal cause of plaintiff's damage, and (4)
3 the extent of the damage." Id. at *6.  "If a plaintiff
4 establishes a prima facie case of retaliatory discharge, then the
5 burden shifts to the defendant to show a legitimate,
6 non-retaliatory reason for the discharge.  Plaintiff may attempt
7 to rebut this showing, if met, by offering evidence of pretext .
8 . . . ." Id.  Even if all the witnesses plaintiff cites in his
9 motion are not relevant to proving his wrongful termination
10 claim, it seems likely that at least two of the doctors he
11 mentions--doctors Alegre and Duffy--would be relevant to showing
12 pretext because plaintiff states that they made reports of his
13 injury to Union Pacific.
14          Moreover, even if plaintiff will not or cannot rely on
15 testimony from his medical experts in establishing pretext for
16 his Tameny wrongful termination claim, plaintiff has mentioned
17 several other witnesses that will be called for both claims.
18 These include his wife, who will testify to both his physical
19 condition before the July 28, 2007, incident and to the events
20 depicted in the surveillance videotape made at Union Pacific's
21 request.  Plaintiff will also call on Gary Goodwill for both
22 claims.  Goodwill took statements from plaintiff, worked with him
23 when he attempted to return to a light duty job with Union
24 Pacific, and also coordinated some of plaintiff's medical care.
25 Plaintiff's economist will need to testify on damages for both
26 claims.  Hearing testimony from these same witnesses twice is
27 inefficient and will prolong a jury's service unnecessarily.
28          Although defendants contend that their witnesses for

8

punitive damages will be different from their liability witnesses, they provide no further specification as to who those witnesses might be.  In contrast, plaintiff appears to intend to call some of the same witnesses for liability and damages purposes and has specifically enumerated those witnesses.  Also, because it is obviously impossible to determine ahead of trial which claims, if any, the jury will decide in plaintiff's favor, that some time might be saved if the jury only heard damages testimony related to plaintiff's winning claims is not a strong enough reason to separate the trial, given the countervailing efficiencies of a single trial.  Overall, there is at least great uncertainty that as to whether savings in efficiency and economic would be made by bifurcation or trifurcation.  See Tuey v. Mammoth Mountain Ski Area, Civ. No. 072442 LKK GGH, 2009 WL 928328, at *10-13 (E.D. Cal. Apr. 6, 2009) (Karlton, J.) (declining to bifurcate trial into liability and damages phases when uncertainty as to number of witnesses who will be called on issue of damages).[3]

　　　　IT IS THEREFORE ORDERED that defendants' motion to separate trial be, and the same hereby is, DENIED.

DATED:  February 6, 2013

　　　　　　　　　　　　　　　/s/ William B. Shubb
　　　　　　　　　　　　　　　WILLIAM B. SHUBB
　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[3] Further, defendants do not state at which stage of the trial the jury will hear evidence about plaintiff's intentional infliction of emotional distress claim, for which plaintiff also requests punitive damages.

9