1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11                          ----oo0oo----

12   ROBERT L. POWELL              NO. CIV. 2:09-01857 WBS CKD

13          Plaintiff,
                                   ORDER
14       v.

15   UNION PACIFIC RAILROAD COMPANY,
     et al.,
16
            Defendants.
17   _____/

18

19                          ----oo0oo----

20          At the conclusion of the evidence in this case,

21   defendant moved pursuant to Rule 50 of the Federal Rules of Civil

22   Procedure for judgment as a matter of law on plaintiff's claim of

23   negligence based on the failure of defendant to inspect its

24   railroad switches in general, or the particular switch at issue

25   in this case, more frequently than once per month.  The motion is

26   predicated on defendant's argument that such claim is precluded

27   ///

28   ///

                                    1

by 49 C.F.R. § 213.235,[1] which provides,

> (a) Except as provided in paragraph (c) of this section, each switch, turnout, track crossing, and moveable bridge lift rail assembly or other transition device shall be inspected on foot at least monthly.

> (b) Each switch in Classes 3 through 5 track that is held in position only by the operating mechanism and one connecting rod shall be operated to all of its positions during one inspection in every [three] month period.

> (c) In the case of track that is used less than once a month, each switch, turnout, track crossing, and moveable bridge lift rail assembly or other transition device shall be inspected on foot before it is used.

The only case to which defendant cites in its original brief in support of this argument is Ferren v. National Railroad Passenger Corp., Civ. No. 00-2262, 2001 WL 1607586 (N.D. Ill. Dec. 12, 2001).  There, the magistrate judge granted a motion in limine barring plaintiff's expert from offering an opinion that the failure to inspect its switch more often than once per month constituted negligence or conduct outside "generally accepted industry standards and practices." Ferren, 2001 WL 1607586, at *3.

The magistrate judge in Ferren appears to have relied heavily upon Waymire v. Norlolk and Western Railway Co., 218 F.3d 773 (7th Cir. 2000), holding that a plaintiff in a case under the Federal Employers Liability Act ("FELA") could not assert claims of liability based on alleged unsafe speed and inadequate warning devices that were inconsistent with the

---

[1]   In their only brief in support of this argument, counsel for defendant incorrectly cite this regulation as § 213.325, which helps explain why the court was unable to find it.

2

1  Federal Railroad Safety Act ("FRSA") regulations on those

2  subjects. Waymire, 218 F.3d at 775-76. Waymire, in turn,

3  appears to rely heavily on the Supreme Court's decision in CSX

4  Transportation, Inc. v. Easterwood, 507 U.S. 658 (1993).

5       Easterwood involved, in part, regulations imposing

6  speed limits on freight and passenger trains along certain

7  kinds of track, which the Supreme Court found preempted any

8  common law state claims based upon excessive speed.

9  Easterwood, 507 U.S. at 662. The pre-emptive effect of the

10  regulations, the Court held, is governed by the language of 45

11  U.S.C. § 434, which states the policy of creating, to the

12  extent practicable, nationally uniform standards relating to

13  railroad safety, and goes on to discuss how to deal with state

14  laws, rules, regulations, orders or standards when the

15  Secretary has adopted a rule, regulation, order or standard

16  covering the subject matter of such State requirement.[2] Id.

17       Whether the same pre-emptive effect would apply to

18  claims of negligence under the FELA, which applies federal,

19  rather than state law, was not addressed by the Easterwood

20  court, nor was the question of whether the regulations dealing

21  with the inspection of switches substantially subsume the

22  subject matter as to be incompatible with claims of negligence

23  under the FELA based on the frequency of inspection.

24       The preemption doctrine stems from the Supremacy

25  Clause of the Constitution and concerns the primacy of federal

26

27       [2]    The FRSA preemption provision has been amended to
   provide clarification regarding state law causes of action. See
28  49 U.S.C. § 20106(a)-(b).

laws.  <u>Felt v. Atchison, Topeka & Santa Fe Ry. Co.</u>, 60 F.3d
1416, 1418 (9th Cir. 1995).  FRSA preemption effectuates that
primacy by limiting state law negligence claims that, through
the imposition of varying standards of care, could result in
inconsistent regulation of railroad safety throughout the
different states.

Achievement of national unity in railroad safety
regulation, however, would not seem to justify FRSA preclusion
of FELA negligence claims.  Preclusion, as contrasted with
preemption, concerns the interrelationship of two federal laws.
<u>Id.</u>  The FELA imposes a reasonableness standard of care on
railroad employers to facilitate railroad workers obtaining
relief for injuries from their employment.  <u>See</u> <u>Urie v.</u>
<u>Thompson</u>, 337 U.S. 163, 174 (1949) ("What constitutes
negligence for the statute's purposes is a federal question,
not varying in accordance with the differing conceptions of
negligence applicable under state and local laws for other
purposes."); Brett R. Nolan, <u>Are Railroads Liable When</u>
<u>Lightning Strikes?</u>, 79 U. Chi. L. Rev. 1513, 1516 (2012) ("FELA
was enacted in 1908 as an effort to relieve railroad employees
of harsh common law doctrines that often prevented recovery for
on-the-job injuries." (citation omitted)).  Because that
standard of care is one of federal law, the FRSA's concern of
national uniformity in railroad safety regulation is not
undermined by FELA negligence claims, which develop federal law
that applies across the nation.

If FRSA regulations could preclude certain negligence
claims under the FELA, then the scope of a railroad's

4

obligation to provide a safe workplace would be circumscribed by regulation, not by its exercise of reasonable care. Negligence, however, is the engine of liability that drives the FELA.  See Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 561 (1987) ("In 1906, Congress enacted the FELA to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees."); Ellis v. Union Pac. R. Co., 329 U.S. 649, 653 (1947) ("[FELA] does not make the employer the insurer of the safety of his employees while they are on duty.  The basis of his liability is his negligence, not the fact that injuries occur.").

        Finding preclusion as between these two statutes would thus be tantamount to concluding that with the FRSA Congress intended to reconfigure the basic structure for imposing liability under the FELA.  Defendant has pointed to no evidence, and this court finds none, that Congress intended to shift the predicate of FELA liability from negligence to only statutory violation in certain instances.  See Kernan v. Am. Dredging Co., 355 U.S. 426, 432 (1958) ("[T]he general congressional intent was to provide liberal recovery for injured workers . . . and it is also clear that Congress intended the creation of no static remedy, but one which would be developed and enlarged to meet changing conditions and changing concepts of industry's duty toward its workers.").  Rather, despite calls for rethinking the FELA--some even from the judiciary--Congress has stalwartly declined to modify the statute.  See, e.g., Thomas E. Baker, Why Congress Should

5

Repeal the Federal Employers' Liability Act of 1908, 29 Harv. J. on Legis. 79, 85-92 (1992)(describing the Federal Courts Study Committee's recommendation to replace FELA with a workers' compensation system and other calls for reform).

Even if regulations promulgated under the FRSA might sometimes preclude FELA claims, this court is not satisfied that § 213.235 in particular would have such effect. As Judge Mueller observed in her Order ruling on defendant's motion for summary judgment in this action, (Docket No. 125), in addition to the Seventh Circuit in Waymire, the Fifth and Sixth Circuits have also held that certain FRSA regulations not only preempt state law claims but also preclude federal tort claims under the FELA. See Nickels v. Grand Trunk W. R.R., Inc., 560 F.3d 426, 428 (6th Cir. 2009); Lane v. R.A. Sims, Jr., Inc., 241 F.3d 439, 443 (5th Cir. 2001). The Ninth Circuit, as Judge Mueller's Order also points out, has not yet decided the issue. However, at least two district judges within the Ninth Circuit have held the FRSA regulations not to preclude negligence claims under the FELA.

In Allenbaugh v. BNSF Railway Co., 832 F. Supp. 2d 1260 (E.D. Wash. 2011), Judge Suko found that the plaintiff's claim that the ballast in the yard was uneven and unsafe was not preempted by 49 U.S.C. § 213.103, dealing with the quality of ballast required to support track. In Abromeit v. Montana Rail Link, Inc., CR No. 09-93, 2010 WL 3724425 (D. Mont. Sept. 15, 2010), Judge Molloy likewise held that the regulations dealing with ballast did not preempt plaintiff's claim based on failure to provide a safe working environment near the tracks.

Both those cases distinguished Nickels, supra.

Here, the court is not satisfied that the concern behind § 212.235 in particular was so much to protect employees from injuries while pulling the switch as it was to prevent derailments and other catastrophes resulting from improperly aligned or defective switches.  To the contrary, the requirement that the inspection be "on foot" suggests that at least one employee will have to pull the switch in order to properly inspect it.  If the switch is hard to pull, as it is alleged the switch in this case was, the employee performing the inspection is just as likely to sustain the kind of injury plaintiff complains of as is any trainman who might later be required to operate it.

While § 212.235 touches on switch inspection at least for ensuring track safety, plaintiff's negligence claim does not put at issue the sufficiency of monthly inspections for that purpose.  Instead, plaintiff wants to claim that such a rate of inspections is insufficient for the railroad to meet its duty of providing a safe place to work.  This court does not find that § 212.235 is such a pervasive regulation of switch inspections that a finding that defendant was under a duty to do more frequent inspections for workplace safety would impede on its regulation of that issue for track safety purposes.

In the absence of any controlling authority, unless and until the Ninth Circuit should decide to align with the Fifth and Sixth, this court is not inclined to deprive an injured plaintiff of the right to argue any plausible theory of

7

1  negligence on the part of the defendant.  The court will

2  therefore deny defendant's motion for judgment as a matter of

3  law on plaintiff's claim based upon negligent inspection of

4  switches.

5          That having been said, there is no assurance that the

6  Court of Appeals will agree with this decision.  In order to

7  minimize the risk of reversal and the need to go through this

8  lengthy trial again if this court has not accurately predicted

9  how the Ninth Circuit will decide the issue, if the jury

10 reaches a verdict in favor of the plaintiff on negligence

11 grounds, the court will then give the attached Special

12 Interrogatories to the jury.[3]  All parties will then be able to

13 know, for purposes of appeal or any other post-trial motions,

14 whether the jury based its finding of negligence on plaintiff's

15 theory that the switch should have been inspected more than

16 once per month or not.

17         IT IS SO ORDERED.

18 DATED:  May 2, 2013

19

20 _____

21 WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27 _____

28 [3]     The question proposed by defendant which the court
   previously agreed to ask the jury will be added to this form.

8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| ROBERT POWELL, | ) | **Case No. 2:06-CV-01857 WBS CKD** |
|  | ) |  |
| Plaintiff, | ) | **SPECIAL INTERROGATORIES TO JURY** |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| UNION PACIFIC RAILROAD | ) |  |
| COMPANY, et al. | ) |  |
|  | ) |  |
| Defendants. | ) |  |
| _____ | ) |  |

We, the jury, answer the questions submitted to us as follows:

    1.  Did the jury find that Robert Powell would have worked for the Union Pacific Railroad Company until his retirement age but for the injuries he sustained on July 28, 2007?

      _____ Yes _____ No.

*Answer Question 2.*

    2.  Did the jury find that defendant Union Pacific Railroad Company was negligent based on the failure to inspect switches in general, or switch 15 in particular, more frequently than once per month?

      _____ Yes _____No.

*If you answered "yes" to Question 2, answer Question 3.  If you answered "no" to Question 2, sign and date this form.*

3.  Was the failure to inspect switches in general or switch 15 in particular more frequently than once per month the only basis upon which the jury found negligence on the part of defendant Union Pacific Railroad Company?

_____ Yes _____No.

*Sign and date this form.*

DATED: _____.

_____
                                    FOREPERSON